Julio VELEZ GOMEZ, et al., Plaintiffs,

v.

SMA LIFE ASSURANCE COMPANY, Defendant.

Civ. No. 90–2362.

United States District Court, D. Puerto Rico.

May 8, 1992.

---

Cordero, Miranda & Pinto, Luis Ramon Ortiz Segura, San Juan, P.R., for plaintiffs.

Feldstein, Gelpi & Gotay, Luis N. Blanco, San Juan, P.R., for defendant. .

## OPINION AND ORDER

GIERBOLINI, Chief Judge.

This case arises out of defendant insurance company's failure to pay disability benefits under a sickness and accident disability policy issued to plaintiff on November 24, 1986. Plaintiff previously worked as a customer engineer for IBM Corporation in Hato Rey, Puerto Rico from August 9, 1971, until March 1, 1989, when IBM placed him on medical disability.

On June 2, 1989, plaintiff filed a written claim for disability benefits with defendant, claiming he was totally disabled due to multiple sclerosis beginning in "10/88". Defendant sent plaintiff a letter dated October 18, 1989 which asserted that plaintiff had not disclosed a pre-existing condition of multiple sclerosis at the time of application. Defendant asked the insured to voluntarily surrender the disability policy as of its effective date, in return for payment of all premiums paid to date plus interest.

Plaintiff claims that over two years and ten and a half months elapsed from the date of the policy's issuance, until defendant's letter of October 1989 requesting voluntary surrender of the policy. Plain-tiff thus asserts that the two year "incontestability clause" in the policy, prohibited defendant from contesting the policy's validity on October 18, 1989, due to medical conditions pre-existing the date of issuance.

Defendant claims plaintiff became disabled before the two year period for contesting claims ran out. Defendant asserts that because a provision of the policy's incontestability clause excludes periods of disability from the two year period, the two year period was tolled at the time of plaintiff's disability and the contract was still contestable in October of 1989.

Plaintiff further claims that Isidro Ortiz Pepín, an agent of defendant insurance company, had knowledge of plaintiff's pre-existing medical condition prior to the policy's issuance, that such knowledge is attributable to the insurance company and that defendant is now estopped from attacking the policy's validity. Defendant has denied that Ortiz Pepín was its agent, or that it had knowledge of plaintiff's medical condition prior to the time plaintiff filed his claim for disability benefits.

Defendant asserts that even if, arguendo, Ortiz Pepín was its agent and he had knowledge of plaintiff's pre-existing medical condition, defendant is not estopped from contesting the policy's validity, for the following reasons: the insurance contract gave the plaintiff notice that the agent could not alter the terms of the written contract; plaintiff colluded with the agent to defraud the defendant; and plaintiff was aware prior to filing his application for disability benefits that coverage would be denied if plaintiff disclosed his true medical condition.

Parties have filed respective motions for summary judgment, and oppositions to such motions. After considering the evidentiary record as a whole, and giving the deference due the party opposing each respective motion for summary judgment, we find that summary judgment should be GRANTED to plaintiffs for the reasons outlined below. We consequently DENY defendant's motion for summary judgment.

SUMMARY JUDGMENT

The decision whether or not to grant summary judgment rests on a determination as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

Summary judgment is an appropriate remedy "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Not all conflicts of fact will bar summary judgment, "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, the requirement is that there be no *genuine* issue of *material* fact." *Liberty Lobby,* 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original); *see also Medina Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 7–8 (1st Cir.1990).

The nonmoving party on the motion bears the burden of production, to show that summary judgment is not appropriate by coming forward with specific facts showing that there is a genuine issue for trial; it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *R.J. Reynolds,* 896 F.2d at 8.

Rule 56(c) mandates the entry of summary judgment after adequate time for discovery, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A defendant bears the burden of proof on an affirmative defense it asserts. *See generally* 5 Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1277 n. 7, p. 461 (1990).

In deciding whether summary judgment is proper, the court must view the record in the light most favorable to the party opposing such motion. *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). A nonmoving party's evidence cannot be merely colorable, but must be significantly probative to show differing versions of the facts which justify a trial, *R.J. Reynolds,* 896 F.2d at 8, 10. Determining the proper scope of coverage of an insurance contract when the underlying material facts are not in dispute is a question of law appropriate to resolution on a motion for summary judgment. *Niagara Fire Insur. Co. v. Pepicelli et al.,* 821 F.2d 216, 219 (3rd Cir.1987).

ANALYSIS

Plaintiff asserts that since the insured filed a claim for benefits on June 2, 1989, and defendant waited until October 18, 1989 to ask plaintiff to surrender his policy, defendant is estopped by the incontestability clause from contesting a medical condition of plaintiff which existed prior to the policy's issuance. Defendant avers as an affirmative defense, that the notice denying plaintiff's claim for benefits and contesting the policy's validity, was made within the period of contestability.

The policy's incontestability clause which is the subject of dispute reads as follows:

**Incontestable-**(a) After this policy has been in force for two years during your lifetime (excluding any period during which you are disabled), we will not be able to contest the statements you made in the application.

(b) We will not be able to reduce or deny any claim for disability which starts after two years from the date of issue because the disease or physical condition existed before the date of issue. There is one exception. We will be able to reduce or deny the claim if the disease or physical

condition is specifically excluded from coverage when the loss occurs.

*See Defendant's motion for summary judgment,* (Ex. 2).

Defendant claims that the phrase "excluding any period during which you are disabled," means that the two year period for contestability is tolled .at the time of disability, if such disability occurs within the two year period before the policy becomes uncontestable. If an insured becomes disabled within the two year time period with an on-going disability, then the period of contestability continues forward, such that the policy never becomes uncontestable. Even were we to accept this analysis as valid, defendant still fails to meet its burden of proof on the affirmative defense that they contested. the validity of plaintiff's disability policy within the period of contestability. We perceive an ambiguity in the incontestability clause, which we appropriately resolve in favor of the plaintiff.

■ It is hornbook law that, "Where there is an ambiguity in an incontestable clause in an insurance policy, such ambiguity will be resolved in favor of the insured ..." 18 *Couch on Insurance 2d (Rev ed)* § 72.33, p. 306; *Accord Rodríguez v. John Hancock Mutual Life,* 110 P.R.R. 1, 7 (P.R.1980); and *Malloy v. New York Life Insur. Co.,* 103 F.2d 439 (1st Cir.1939).

■ We see at least two plausible interpretations of the language of the policy's incontestability clause "excluding any period during which you are disabled." One could plausibly argue that this language means, that if a claimant files a disability claim during the two year period for contestability—i.e. twenty months after issuance of the policy; the period of contestability continues to run so that the policy would not be considered uncontestable, even if the insurance company does not contest the policy and deny the claim until twenty-five months from the date of issuance.

On the other hand, one could equally interpret the clause to mean that if a claimant filed a disability claim outside the two year period for contestability—i.e. twenty-

five months after issuance of the policy; then the contract becomes incontestable after the twenty-fourth month and the contestability period is not extended retroactively.

Since the incontestability clause contained in this insurance policy does not specify whether the phrase "excluding any period during which you are disabled", means that disability is .determined from the time of actual physical disability, or whether disability is measured from the time of the insurer's notice of disability, we find it to be ambiguous.

We think that the latter interpretation of the phrase, that disability is measured from the time of the insurer's notice of disability, is more in keeping with the purposes of incontestability clauses. As one insurance treatise has noted:

> An incontestability· provision in a policy is designed to require the insurer to investigate an act with reasonable promptness if it wishes to deny liability on the ground of false representation or warranty by the insured. It prevents an insurer from lulling the insured, by inaction, into fancied security during the time when the facts could best be ascertained and proved, only to litigate them belatedly, possibly .after the death of the insured. The purpose of an incontestable clause is to annul all warranties and conditions that might defeat the right of the insured after the lapse of the stipulated time.

18 Couch, *supra,* § 72.2, at 283 (internal citations omitted); *Accord Rodríguez,* 110 P.R.R. at 9–10; and *Heirs of Roche v. Banco de la Vivienda,* 103 P.R.R. 313, 318–19 (P.R.1975).

The Supreme Court of Puerto Rico has noted that the concept of incontestability of an insurance policy is the foundation of Puerto Rico's statutory system of insurance, which recognizes a insurance company's unequal bargaining power over an insured; "It [the principle of incontestability] is a vital safeguard of the right of the insured and his beneficiaries in a type of contract in which the insured simply ad-

heres to the terms of the policy carefully selected by the insurer." *Heirs of Roche,* 103 P.R.R. at 317–18.

Incontestability is a condition imposed by law upon the insurance industry, and factors such as an insurer's ignorance of easily discoverable facts, or failure to uncover a falsity in an application within the time period for contestability due to an insurance company's delegation of administrative responsibilities, are not legitimate reasons for refusing to find an insurance contract incontestable. *Id.* at 318. The law imposes a duty on the insurance company to reasonably investigate, to what extent the physical and medical characteristics of an applicant makes such applicant an acceptable risk, by utilizing such methods as examination of applicant by a physician, surveying his clinical history and the other usual steps taken by insurance companies before obligating themselves to issue coverage to an applicant. *Id.* at 317.

The defendant here has failed to come forward with evidence of any investigation it conducted, into plaintiff's medical condition, prior to such time as plaintiff filed his claim for disability benefits, two years and six and a half months after the date the insurance policy was issued. Defendant in fact increased plaintiff's monthly benefits for total disability from $700 to $800 a month on November 24, 1988, the second anniversary of the date of issuance of the disability policy. *See also Rodríguez,* 110 P.R.R. at 9 (court found insurance company had sufficient time to discover and investigate pre-existing medical condition, and specifically noted that company on one year anniversary of date of issuance of policy, issued a second policy rather than denying policy for health reasons.)

The Supreme Court of Puerto Rico noted in an analogous case involving a two year period of incontestability that, "If in two years the [insurance company] did not show any interest in protecting itself against this risk, its aspiration to elude the clause which establishes that after two years the policy becomes incontestable lacks reasonable grounds." *Id.; citing Simpson v. Phoenix Mutual Life Ins. Co.,* 24 N.Y.2d 262, 299 N.Y.S.2d 835, 247 N.E.2d 655 (1969); and *Cragun v. Bankers Life Company,* 28 Utah 2d 19, 497 P.2d 641 (1972).

Defendant's letter of October 18, 1989 was the first indication that the insurance company had done any investigation at all of plaintiff's medical condition, and came nearly three years after the policy's date of issuance on November 24, 1986, despite the policy's language that the period of contestability was for two years. Defendant insurance company took plaintiff's premiums for almost three years, increased his potential disability benefits after two years without any apparent investigation on defendant's part, and by their inaction lulled plaintiff into a false sense of security that he and his family's financial needs would be met if he had to file for disability benefits.

In summary, we find the policy's incontestability clause to be an ambiguous one. Consequently we interpret it in the light most favorable to plaintiff, and hold that disability for purposes of the incontestability clause means from such time as the insurance company has notice of an insured's disability, an interpretation which is consistent with an insurance company's duty of reasonable investigation.

■ We conclude that defendant had an adequate time period to reasonably investigate plaintiff's medical condition, and that defendant was negligent in failing to carry out even a minimal level of investigation during the two year time period for contestability. Plaintiff filed a claim for benefits over two and a half years from the date of the policy's issuance. In light of our analysis above, defendant has failed to meet its burden of proof on the affirmative defense that the contract was still contestable on October 18, 1989 when they first asked plaintiff to surrender his policy. We hold that the disability insurance policy was incontestable on such date.

■ As an alternative ground for our decision to grant summary judgment in favor of plaintiff, we specifically find that plaintiff was not totally disabled before such time as he was placed on medical

disability by IBM on March 1, 1989, and he was also not residually disabled before the March 1st date. The insurance policy's "Rider For Residual Disability Benefits" defines the phrases "disability" or "disabled" as meaning "total disability or residual disability." *See Defendant's motion for summary judgment*, (Ex. 2). The insurance policy's Rider offers no further definition of total disability.

One insurance treatise has defined "total disability" as when "the infirmity or disability renders the person unable to perform substantially all the material acts of an occupation which his age training experience and physical condition would suit him for, ..." 15 Couch, *supra*, § 53.40, at 76. *Barron's Law Dictionary* defines "Total Disability" as follows: "as used in insurance contracts, a person's inability to perform the material duties of some occupation for which he or she is qualified by experience or training;". Steven H. Gifis, *Barron's Law Dictionary*, 2d edit., p. 483 (1984).

Under both a common sense definition, as well as a legal definition of "total disability", we hold that plaintiff was not disabled until March 1st, since plaintiff was not "unable to perform substantially all the material acts" of his occupation within the two year period of contestability. Plaintiff, in fact, could "perform the material duties" of his occupation and did in fact perform them, until March 1st when he was placed on medical disability by IBM. Defendant has offered absolutely no evidence to contradict the fact that plaintiff was employed up until March 1, 1989.

The insurance policy's Rider does define "Residual Disability" or "Residually Disabled", as meaning "you are not totally disabled; and although you are engaging in an occupation, injury or sickness causes you to earn at least 20% less than your base earnings." *See Defendant's motion for summary judgment*, (Ex. 2). The Rider further defines "Base Earning" as the "greater of: the average of your monthly earned income during the twelve months before disability began; or the average of your monthly earned income during the

highest two consecutive of the last three calendar years before disability began." *Id.*

We likewise find that plaintiff was not disabled under the policy's technical definition of "residual disability", since defendant has not demonstrated that plaintiff earned at least 20% less than his base earnings. Since plaintiff was continuing to work until over two years and three months from the date of the policy's issuance, and there has been no evidence offered that he was earning at least 20% less than his base earnings, we find that plaintiff was not totally or residually disabled before the March 1st date. We also find that since March 1, 1989 is beyond the two year period for contestability, the insurance policy contract was uncontestable by that date.

Because of our resolution of the motions for summary judgment on the issues of interpretation of the incontestability clause and the policy's definition of disability and residual disability, we need not resolve the issues of whether: Ortiz Pepín was an agent of defendant; whether the information conveyed to him was imputed to the insurance company; and the extent of his knowledge. Yet we find as an independent ground for granting plaintiff's motion for summary judgment that Ortiz Pepín was an agent of SMA, and that he had sufficient information to place the insurance company on notice that further investigation of plaintiff's medical condition was warranted during the two year period of contestability.

■ We are unpersuaded by defendant's contention that Ortiz Pepín could not be their "agent" since his license to sell insurance as an "insurance agent" of SMA had not yet received final approval. The term "agent" is a legal term of art, and Ortiz Pepín can be found to be an "agent" of defendant, despite not having an official license if he had the apparent authority to act as their agent. Apparent authority is such authority as an insurance company knowingly permits such agent to assume, and the authority that the agent appears to have, as measured by the authority that a

reasonable person would naturally suppose that the agent possessed. 3 Couch, *supra*, § 26.62 at 618.

The facts which support our conclusion that Ortiz Pepín was an agent of SMA by implication, are as follows: Ortiz Pepín suggested to plaintiff that he obtain disability insurance, recruited Montes to sell the disability insurance to plaintiff, testified that he shared commissions with Monte on 90% of the policies that he promoted and Montes sold, was present at the time that plaintiff filled out the application, and was present at the time of the policy's delivery to plaintiff. All these facts militate in favor of finding that Ortiz Pepín was an agent of defendant. 3 Couch, *supra*, § 26.25 at 556, nn. 2, 19 ("Where a broker holds himself out as a general agent, solicits a policy, collects a premium a part of which he retains as his commission according to his custom, and a policy is issued upon information procured by him, he is a agent of the insurer by implication as to the insured who, in good faith, dealt with him as such.") (internal case citations omitted.)

Alternatively, we hold that in addition to Ortiz Pepín being an agent of SMA by implication, he is also an agent by estoppel. Couch notes of agency by estoppel that, "An insurer is estopped to deny that a certain person is its agent or possesses the authority he assumes to exercise, where it knowingly causes or permits him so to act as to justify a third person of ordinary careful and prudent business habits to believe that he possesses the authority exercised." 3 Couch, *supra*, § 26.28, p. 560.

The fact that a purported "agent" of an insurance company has no agent's license from the state to officially represent that company, is not dispositive on the issue of "agency". *Id.*, § 26.30, p. 567. We find that since Ortiz Pepín accompanied Montes, a licensed agent of SMA, to both the filling out and delivery of the application to plaintiff, SMA thus knowingly permitted Ortiz Pepín to act as and portray himself as their agent, such that they are estopped to deny the fact of his agency now.

■ Since we have concluded that Ortiz Pepín is an agent of defendant, it is hornbook law that

Notice to an insurer's agent, or knowledge obtained by him while acting within the scope of his authority, is notice to or knowledge of the insurer with respect to material facts affecting the risk, and the insurer is estopped from asserting the invalidity of the policy at the time it was issued, for the violation of any of the conditions of such policy, if, at the time it was so issued, the fact of such violation was known to the company or its duly authorized agent, ...

*Id.*, § 26.133, pp. 763–771, nn. 19–20 (internal case citations omitted.)

Under the doctrine of imputed knowledge, it is irrelevant whether or not the specific knowledge obtained is actually conveyed from the agent to the principal—the knowledge of the agent is still held to be the knowledge of the principal. *Id.*, § 26:134, p. 773. Likewise it is immaterial whether the agent had actual knowledge or not, mere notice or constructive knowledge is sufficient, so long as the insurer or its agent has knowledge of facts which put it upon further inquiry. *Id.*, § 26:146, pp. 801–02.

In considering plaintiff's motion for summary judgment, we must give due deference to defendant's version of the facts. Accordingly, we find that at the time of plaintiff's application, Ortiz Pepín knew, at a very minimum, that plaintiff suffered from certain medical ailments which he failed to disclose in his application. This knowledge that Ortiz Pepín, the agent of SMA possessed, is thus imputed to defendant, SMA Life Assurance Company, and put them on notice that further investigation of plaintiff's medical condition was warranted. Defendant's failure to further investigate within the two year period of contestability, despite having imputed knowledge of plaintiff's undisclosed medical condition, means they are estopped from raising the issue of pre-existing medical conditions now. Summary judgment should also be granted plaintiff on this ground.

We also explicitly reject the three remaining defenses defendant raises in their opposition to plaintiff's motion for summary judgment, that: 1) the insurance contract gave the plaintiff notice that the agent could not alter the terms of the written contract; 2) plaintiff colluded with the agent to defraud the defendant; and 3) plaintiff was aware prior to filing his application for disability benefits that coverage would be denied if plaintiff disclosed his true medical condition.

As an overview, we note that even were we to find merit in these defenses, which we do not, we find that defendant is barred from raising them after the time period for contestability has run. *See Rodríguez*, 110 P.R.R. at 9 (purpose of incontestability clause is to fix period during which insurer is required to investigate and discover any facts that would defeat an otherwise timely claim of insured, such as plaintiff's misrepresentation of his sound health, but "once this period has elapsed, said defenses could not be raised."); and *Heirs of Roche*, 103 P.R.R. at 319 (insurance company's waiver of defenses after term of contestability expires is part of consent to insurance policy). Consistent with our analysis above, we find that the period of contestability had run out after two years, such that defendant was unable to deny coverage or raise defenses, two years and ten and a half months after the policy's issuance, since the policy was then incontestable.

We would also find these defenses meritless if properly raised. Defendant alleges as its first defense that the insurance company's agent was not authorized to alter the terms of the application or the contract. Such defense is inapplicable to the facts of this case. Ortiz Pepín did not alter any of the terms of the written contract. The contract and the policy remained intact with a two year period in which to contest plaintiff's representations therein, and the defendant neglected to exercise their duty of reasonable investigation during such time.

Defendant quotes Couch to argue that express stipulations in applications can restrict knowledge of an agent from being imputed to a principal. The language defendant quotes however, makes an express distinction between altering the terms of an application, and waiver of stipulations of the application. The application at bar did not specifically prohibit waiver of stipulations by agents, which we find this case to be, thus the purported restriction on imputation of knowledge from agent Ortiz Pepín to principal SMA is simply inapplicable to our facts.

Even if there were enumerated limitations in the policy upon an agent's power, this does not prevent application of the general rule that knowledge of the agent as to matters in the general scope of his authority is the knowledge of the principal. 3 Couch, *supra*, § 26:137, at 779. Since we find that Ortiz Pepín's actions were within the scope of the apparent authority given to him by SMA, we would not give effect to any written policy provision which is contrary to the authority actually granted him in practice by defendant.

Although we do not find that the language in the application regarding no alteration of the contract to be applicable here, if applicable we would entertain serious doubts about enforcing such clause. The Puerto Rico Supreme Court has noted that insurance contracts are generally contracts of adhesion, where the insurance company has unequal bargaining power. *Heirs of Roche*, 103 P.R.R. at 318. We would be hesitant to enforce this provision of the application, since it is in small nonitalicized type which does not put an insured lay person on notice of the clause's true importance, in reversing the traditional agency law doctrine of implied authority.

Since we find that the two remaining affirmative defenses are time barred, we will not dwell on them. But we likewise find that defendant fails to meet their burden of proof on their affirmative defenses of showing collusion to defraud or that plaintiff knew that such policy would be contested in advance. The facts presented show that plaintiff and Ortiz Pepín thought that the insurance company would likely investigate plaintiff's medical condition, as insurance companies have an obligation to

do so during the period of contestability if they wish to challenge a policy's validity. This is not sufficient to support the defendant's alleged claims of plaintiff's intent to defraud and their knowledge that liability would be contested. Defendant fails to satisfy their burden of proof on these defenses.

We conclude that there are no material issues of fact remaining on the issue of defendant's contractual obligation to provide disability benefits under the insurance policy, such that a trial would be necessary on that issue. Accordingly, we hereby GRANT plaintiffs' motion for summary judgment on the issue of liability, and hereby DENY defendant's motion for summary judgment. The issue of damages will be considered at a hearing to be scheduled at a future date.

SO ORDERED.