USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1430 JULIO VELEZ-GOMEZ, ET AL., Plaintiffs, Appellees, v. SMA LIFE ASSURANCE COMPANY, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Gilberto Gierbolini, U.S. District Judge] ___________________ ____________________ Before Cyr, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ Frank Gotay-Barquet, with whom Gustavo A. Gelpi, Edward A. Godoy, ___________________ _________________ _______________ Feldstein, Gelpi & Gotay, and Ralph L. Diller, Associate Counsel, __________________________ ________________ State Mutual Companies, were on brief for appellant. John E. Mudd, with whom Luis Ortiz Segura and Cordero, Miranda & ____________ __________________ __________________ Pinto were on brief for appellees. _____ ____________________ November 9, 1993 ____________________ CYR, Circuit Judge. SMA Life Assurance Co. (SMA) seeks CYR, Circuit Judge. _____________ to set aside the summary judgment entered in favor of plaintiff appellee Julio V lez Gom z, contending, inter alia, that the _____ ____ court below incorrectly ruled that the incontestability clause in the SMA disability-income insurance policy issued to V lez is ambiguous. We vacate the district court judgment and remand for further proceedings. I I BACKGROUND BACKGROUND __________ The relevant facts are recited in the light most favorable to SMA. O'Connor v. Steeves, 994 F.2d 905, 907 (1st ________ _______ Cir. 1993). V lez was diagnosed with multiple sclerosis around 1983. Sometime in 1986, V lez and his wife attended a dinner party at the home of their neighbor, Isidro Ortiz Pep n. Amongst a group of people at the party, V lez's wife made comments about her husband's health. There is no evidence that Ortiz overheard or participated in the conversation, nor that Ortiz was aware V lez had multiple sclerosis.1 Shortly thereafter, Ortiz, who was neither an SMA employee nor authorized to sell its insurance, arranged for V lez to meet with Luis R. Montes, an SMA agent. There was no discus- sion of V lez's condition at their meeting and Montes was not ____________________ 1There is evidence that Ortiz learned that V lez was experi- encing "achaques," a Spanish word roughly equivalent to "general aches and pains." made aware of V lez's "achaques" or the multiple sclerosis diagnosis. V lez represented on the SMA insurance application that he had not been diagnosed with, or received treatment for, any ___ nerve disorder (viz., multiple sclerosis) during the preceding ____ ten years. On November 24, 1986, SMA issued a disability-income insurance policy designating V lez as the insured. In June of 1989, V lez, claiming total disability, applied for benefits under the SMA policy. Based on the alleged material misstatement by V lez in the insurance application, SMA refused to pay on the policy and refunded all premiums, with interest. Whereupon, V lez brought the present action. Following discovery, the parties filed cross-motions for summary judgment. V lez contended that the two-year bar period for contesting the policy had expired, and, further, that SMA was estopped from contesting the policy based on V lez's preexisting medical condition because Ortiz, allegedly SMA's agent, had known at the time the policy was issued that V lez was suffering from multiple sclerosis. According to SMA, on the other hand, the incontestability clause tolled the two-year period while V lez was disabled, V lez became disabled less than two years after the policy went into effect and, therefore, SMA was still entitled to contest the policy. The district court found for V lez on the incontest- ability clause issue and two other liability theories. See V lez ___ _____ 4 Gom z v. SMA Life Assur. Co., 793 F. Supp. 378 (D.P.R. 1992). _____ ____________________ SMA appealed. II II DISCUSSION DISCUSSION __________ We review a grant of summary judgment de novo, employ- __ ____ ing the same criteria incumbent upon the district court in the first instance. Goldman v. First Nat'l Bank, 985 F.2d 1113, 1116 _______ ________________ (1st Cir. 1993). Summary judgment is appropriate where the record, viewed in the light most favorable to the non-moving party, reveals no trialworthy issue of material fact and the moving party is entitled to judgment as a matter of law. Id.2 ___ 1. The Incontestability Clause. 1. The Incontestability Clause. ___________________________ Incontestability clauses set temporal limits on an insurer's right to challenge its insurance policy based on alleged misstatements in the insurance application. The SMA incontestability clause, a simplified version of the model contained in the Puerto Rico Insurance Code, see P.R. Laws Ann. ___ tit. 26, 1606 (1977), provides: (a) After this policy has been in force for two years during your lifetime (excluding any _________ ___ period during which you are disabled), [SMA] ______ ______ _____ ___ ___ ________ will not be able to contest the statements made in the application. ____________________ 2Contrary to V lez's novel contention, SMA's cross-motion for summary judgment does not estop it from claiming that genuine issues of material fact precluded summary judgment against SMA. _______ ___ 5 (Emphasis added.) The quoted parenthetical governs this case.3 The district court found the parenthetical ambiguous as to "whether . . . disability is determined from the time of actual physical disability, or . . . from the time of the in- surer's notice of disability." V lez Gom z, 793 F. Supp. at 381 ______ __ __________ ___________ (emphasis added). On appeal, SMA contends that the district court improvised ambiguity where there was none. The insurance policy is to be interpreted in accordance with Puerto Rico law recently surveyed by this court: Under Puerto Rico law, the Insurance Code of Puerto Rico, 26 L.P.R.A. 101, et seq., controls the interpretation of insur- ance contracts. Roberto Mel ndez Pi ero v. ________________________ Levitt & Sons of Puerto Rico, Inc., 91 J.T.S. __________________________________ 95, 9052 (December 13, 1991). Article 11.250 of the Insurance Code of Puerto Rico provides that every insurance contract "shall be con- strued according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any lawful rider, endorsement, or application attached and made a part of the policy." 26 L.P.R.A. 1125. See also Puerto Rico Elec- ___ ____ __________________ tric Power Authority v. Philipps, 645 F. _____________________ ________ Supp. 770, 772 (D.P.R. 1986). When the In- surance Code of Puerto Rico does not provide an interpretive approach for a particular situation, the Civil Code is used as a sup- ____________________ 3The Puerto Rico Insurance Code authorizes the following clause in disability-insurance policies: INCONTESTABLE: After this policy has been in force for a period of three years during the lifetime of the insured (excluding any period during which the insured _________ ___ ______ ______ _____ ___ _______ is disabled), it shall become incontestable as to the __ ________ statements contained in the application. P.R. Laws Ann. tit. 26, 1606 (1977). Deviations from the Insurance Code model (e.g., SMA's use of a two-year, rather than ____ a three-year, contestability period) are permitted provided they benefit the insured. Id. 1113(2), 1604 (1977). ___ 6 plemental source of law in interpreting the insurance contract. Puerto Rico Housing Bank ________________________ v. Pagan Insurance Underwriters, 11 Official _____________________________ Translations 3, 8 (1981); 111 D.P.R. 1, 6; Gonzalez v. John Hancock Mutual Life Insur- ________ _________________________________ ance Co., 927 F.2d 659, 669 (1st Cir. 1991). _________ Article 1233 of the Puerto Rico Civil Code provides that when "the terms of a contract are clear and leave no doubt as to the inten- tions of the contracting parties, the literal sense of its stipulations shall be observed." 31 L.P.R.A. 3471. Nieves v. Intercontinental Life Ins. Co., 964 F.2d 60, 63 (1st ______ _______________________________ Cir. 1992). As a general matter, ordinary rules of construction apply to incontestability clauses. 1A J. Appleman, Insurance Law _____________ and Practice, 311 at 313 (1981) (hereinafter Appleman); 18 G. ____________ ________ Couch, Couch on Insurance 2d 72:9 (rev. ed. 1983) (hereinafter _____________________ Couch). _____ The first interpretive waymark, of course, is the language of the parenthetical tolling provision itself: "exclud- _______ ing any period during which you are disabled," where we find no ___ ___ ______ ______ _____ ___ ___ ________ ambiguity whatever. Rather, the parenthetical straightforwardly tolls the running of the two-year period for the duration of any disability commencing within it. When "the wording of the contract is explicit and its language is clear, its terms and conditions are binding on the parties." Nieves, 964 F.2d at 63 ______ (citations omitted). Related provisions within the four corners of the policy likewise counsel a common-sense reading of the plain language of the tolling provision. First, the term "disability" is defined in the policy as "injury or sickness [that] makes you unable to engage in your regular occupation." Thus, the date of 7 disability is the relevant tolling event. There is nothing to suggest that post-disability notification of the insurer is germane to the tolling inquiry. Second, our interpretation of the parenthetical in paragraph (a) comports precisely with the language in companion paragraph (b): (b) [SMA] will not be able to reduce or deny any claim for disability which starts after __________ _____ ______ two years from the date of issue because the disease or physical condition existed before the date of issue. (Emphasis added.) The hand-and-glove fit between these coordi- nate provisions is completely undone by V lez's interpretation. The parenthetical is adapted from a standardized incon- testability clause mandated by statute in at least forty-five states, the District of Columbia, and the U.S. Virgin Islands, in addition to Puerto Rico. We consider it significant that every other court that has considered the matter to date has arrived at the interpretation urged by SMA, and no court has suggested a notification requirement. See, e.g., Wischmeyer v. Paul Revere ___ ____ __________ ___________ Life Ins. Co., 725 F. Supp. 995, 998 (S.D. Ind. 1989) ("This ______________ ____ clause of the contract is plain and unambiguous.") (emphasis ______ __ ___ ________ __ _____ ___ ___________ added); Bronson v. Washington Nat'l Ins. Co., 207 N.E.2d 172, _______ __________________________ 176 (Ill. App. 1965) (Holding contestability period tolled at onset of insured's disability); Taylor v. Metropolitan Life Ins. ______ ______________________ Co., 214 A.2d 109, 114-15 (N.H. 1965) (same); Standard Security ___ __________________ Life Ins. Co. v. Klamer, 276 N.Y.S.2d 645, 646 (N.Y. App. Div. ______________ ______ 1967) (same); Union Mut. Life Ins. Co. v. Kevie, 215 N.Y.S.2d _________________________ _____ 298 (N.Y. App. Div. 1961) (same). 8 An understanding of the origins and function of incon- testability clauses likewise confirms the construction urged by SMA. In mandating a contractual period of repose on insurer challenges to disability-income insurance policies predicated on alleged misrepresentations in the insurance application, legisla- tures accommodate the interests of both insurers and insureds, based on two competing policies: promoting insurance security and deterring insurance fraud. See Appleman, 311 at 305-306; ___ ________ see also Couch, 72:16. Thus, after the contestability period ___ ____ _____ has run, the insurer cannot withdraw insurance protection even ____ though the insurance application contained misstatements. On the ______ other hand, to better forfend against the occasional insured who would perpetrate fraud at the expense of insurers and their fellow insurance consumers, the contractual limitations period is tolled for the duration of any disability arising within the relativelybriefcontestabilityperiodfollowingissuanceofthepolicy.4 ____________________ 4As the Wischmeyer court explained: __________ The clause protects an insured who is healthy enough to work throughout the two-year period from losing the security of disability in- surance because of some prior condition that might eventually disable him. On the other hand, the insurer is protected in that it is not precluded from denying benefits to an ap- plicant whose pre-existing condition is so bad that he becomes disabled during the two- year period. Wischmeyer, 725 F. Supp. at 1001-02. __________ Under the "notification" theory adopted below, however, a dishonest insured could frustrate this legislative intent com- pletely, simply by waiting out the contestability period before submitting a claim. Thus, in our view the parenthetical clause 9 2. The Date of Disability. 2. The Date of Disability. ______________________ As an alternate basis for summary judgment, the dis- trict court specifically found that V lez did not become disabled ______ ________ until March 1, 1989, more than two years after the policy was issued on November 24, 1986. Thus, even under our reading of the incontestability clause, SMA would be barred from asserting the present challenge. The district court based its disability-date finding exclusively on a letter from IBM, stating that V lez was employed from August 9, 1971 until March 1, 1989, when he went on "medical disability."5 The IBM letter did not stand alone, however. V lez's claim for disability benefits under the SMA policy included a statement from his own physician indicating that V lez became "totally disabled (unable to work)" in October of 1988, within two calendar years after the policy issued. The summary judgment record further reveals that V lez filed a disability claim with the Social Security Administration on June 5, 1989, in which he represented (in the words of the administrative law judge) that "he became disabled as of November 2, 1987 due to Multiple Sclerosis." Given this evidence, and the reasonable inferences therefrom, Goldman, 985 F.2d at 1116, the factual _______ ____________________ clearly reflects the legislature's rejection of the "notifica- tion" theory, based on policy grounds well within its exclusive domain. Id. at 1004. ___ 5The IBM letter states: "This will serve as certification that Mr. Julio Velez was employed by [IBM] from August 9, 1971 until he went on Medical Disability on March 1, 1989." 10 dispute over the onset of V lez's disability simply was not amenable to summary disposition. 3. The Duty to Investigate. 3. The Duty to Investigate. _______________________ As its third ground for summary judgment, the district court held SMA estopped from contesting the policy because (1) Ortiz knew of V lez's multiple sclerosis before the policy issued; (2) Ortiz was SMA's agent; (3) Ortiz's knowledge is imputable to SMA; (4) V lez's health problems would have prompted a reasonably prudent insurer to investigate V lez's preexisting condition; and (5) SMA failed to investigate during the contest- ability period. Even assuming that the many subsidiary factual and legal elements in its conclusion were properly resolved under our summary judgment jurisprudence, the district court's conclu- sion cannot stand. Its thesis that SMA failed to meet its duty to investigate "during the contestability period" collapses in ______ ___ ______________ ______ view of our determination, see supra at pp. 6-8, that the two- ___ _____ year contestability period was tolled by V lez's intervening disability. Further, the district court ruling falters on its impermissible factual premise that SMA was on notice of "certain medical conditions" which would have prompted a prudent insurer to investigate. Our summary judgment jurisprudence precludes judicial resolution of genuine issues of material fact. Goldman, _______ 985 F.2d at 1116. No doubt what Ortiz knew about V lez's medical condition, see supra at pp. 2-3, may be hotly contested at trial. ___ _____ At the summary judgment stage, however, there is "no room for 11 credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) . . . ." Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.2d 932, _________ ____________________________________ 936 (1st Cir. 1987). Drawing all reasonable inferences favorable to SMA, as we must, see Goldman, 985 F.2d at 1116, it is ___ _______ inconceivable to us that V lez's wife's dinner-party comment about her husband's "achaques" ("aches and pains") reasonably ________ could be considered conclusive evidence sufficient to require a prudent insurer to act on any general duty to investigate during the contestability period.6 Given the plain language in the incontestability clause and the inconclusive state of the summary judgment record, the legal and factual grounds for holding that SMA violated a duty to investigate during the contestability period were untenable. ____________________ 6The two cases the district court relied on for its holding that insurers have a general "duty to investigate" during the contestability period, Rodriguez v. John Hancock, 110 D.P.R. 1, _________ ____________ 10 Official Translations 913 (1980), and Heirs of Roche v. Banco ______________ _____ de la Vivienda, 103 D.P.R. 656, 3 Official Translations 1 (1975), ______________ are inapposite. Both involved attempts to contest policies after the expiration of the contestability period. Neither case stands for the proposition that insurers have a general duty to investi- gate, nor that a failure to investigate might estop an insurer from challenging a policy, during the contestability period. ______ ___ ______________ ______ 12 III III CONCLUSION CONCLUSION __________ For the foregoing reasons, the judgment of the district court must be vacated and the case must be remanded for further proceedings. The district court judgment is vacated and the case is ___ ________ _____ ________ __ _______ ___ ___ ____ __ remandedfor further proceedings consistent herewith. So ordered. ___________ _______ ___________ __________ ________ __ _______ 13