Julio VELEZ–GOMEZ, et al.,
Plaintiffs, Appellees,

v.

SMA LIFE ASSURANCE COMPANY,
Defendant, Appellant.

No. 93–1430.

United States Court of Appeals,
First Circuit.

Heard Oct. 5, 1993.

Decided Nov. 9, 1993.

Frank Gotay–Barquet, with whom Gustavo A. Gelpi, Edward A. Godoy, Feldstein, Gelpi & Gotay, Old San Juan, PR, and Ralph L. Diller, Associate Counsel, State Mut. Companies, Worcester, MA, were on brief, for defendant, appellant.

John E. Mudd, with whom Luis Ortiz Segura and Cordero, Miranda & Pinto, Old San Juan, PR, were on brief, for plaintiffs, appellees.

Before CYR, Circuit Judge, BOWNES, Senior Circuit Judge, and BOUDIN, Circuit Judge.

CYR, Circuit Judge.

SMA Life Assurance Co. (SMA) seeks to set aside the summary judgment entered in favor of plaintiff appellee Julio Vélez Goméz, contending, *inter alia,* that the court below incorrectly ruled that the incontestability clause in the SMA disability-income insurance policy issued to Vélez is ambiguous. We vacate the district court judgment and remand for further proceedings.

## I

### BACKGROUND

The relevant facts are recited in the light most favorable to SMA. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). Vélez was diagnosed with multiple sclerosis around 1983. Sometime in 1986, Vélez and his wife attended a dinner party at the home of their neighbor, Isidro Ortiz Pepín. Amongst a group of people at the party, Vélez's wife made comments about her husband's health. There is no evidence that Ortiz overheard or participated in the conversation, nor that Ortiz was aware Vélez had multiple sclerosis.[1]

Shortly thereafter, Ortiz, who was neither an SMA employee nor authorized to sell its insurance, arranged for Vélez to meet with

Luis R. Montes, an SMA agent. There was no discussion of Vélez's condition at their meeting and Montes was not made aware of Vélez's "achaques" or the multiple sclerosis diagnosis.

Vélez represented on the SMA insurance application that he had *not* been diagnosed with, or received treatment for, any nerve disorder (*viz.,* multiple sclerosis) during the preceding ten years. On November 24, 1986, SMA issued a disability-income insurance policy designating Vélez, as the insured.

In June of 1989, Vélez, claiming total disability, applied for benefits under the SMA policy. Based on the alleged material misstatement by Vélez in the insurance application, SMA refused to pay on the policy and refunded all premiums, with interest. Whereupon, Vélez brought the present action.

Following discovery, the parties filed cross-motions for summary judgment. Vélez contended that the two-year bar period for contesting the policy had expired, and, further, that SMA was estopped from contesting the policy based on Vélez's preexisting medical condition because Ortiz, allegedly SMA's agent, had known at the time the policy was issued that Vélez was suffering from multiple sclerosis. According to SMA, on the other hand, the incontestability clause tolled the two-year period while Vélez was disabled, Vélez became disabled less than two years after the policy went into effect and, therefore, SMA was still entitled to contest the policy.

The district court found for Vélez on the incontestability clause issue and two other liability theories. *See Vélez Goméz v. SMA Life Assur. Co.,* 793 F.Supp. 378 (D.P.R. 1992). SMA appealed.

## II

### DISCUSSION

We review a grant of summary judgment *de novo,* employing the same criteria incumbent upon the district court in the first in-

---

1. There is evidence that Ortiz learned that Vélez was experiencing "achaques," a Spanish word

roughly equivalent to "general aches and pains."

stance. *Goldman v. First Nat'l Bank*, 985 F.2d 1113, 1116 (1st Cir.1993). Summary judgment is appropriate where the record, viewed in the light most favorable to the non-moving party, reveals no trialworthy issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*[2]

### 1. The Incontestability Clause.

Incontestability clauses set temporal limits on an insurer's right to challenge its insurance policy based on alleged misstatements in the insurance application. The SMA incontestability clause, a simplified version of the model contained in the Puerto Rico Insurance Code, *see* P.R.Laws Ann. tit. 26, § 1606 (1977), provides:

(a) After this policy has been in force for two years during your lifetime (*excluding any period during which you are disabled* ), [SMA] will not be able to contest the statements made in the application.

(Emphasis added.) The quoted parenthetical governs this case.[3]

The district court found the parenthetical ambiguous as to "whether ... disability is determined from the time of actual physical disability, or ... from the time of the insurer's *notice of disability.*" *Vélez Goméz*, 793 F.Supp. at 381 (emphasis added). On appeal, SMA contends that the district court improvised ambiguity where there was none.

■ The insurance policy is to be interpreted in accordance with Puerto Rico law recently surveyed by this court:

Under Puerto Rico law, the Insurance Code of Puerto Rico, 26 L.P.R.A. §§ 101, et seq., controls the interpretation of insurance contracts. *Roberto Meléndez Piñero v. Levitt & Sons of Puerto Rico, Inc.,* 91 J.T.S. 95, 9052 (December 13, 1991). Article 11.250 of the Insurance Code of Puerto Rico provides that every insurance con-

tract "shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any lawful rider, endorsement, or application attached and made a part of the policy." 26 L.P.R.A. § 1125. *See also Puerto Rico Electric Power Authority v. Philipps,* 645 F.Supp. 770, 772 (D.P.R.1986). When the Insurance Code of Puerto Rico does not provide an interpretive approach for a particular situation, the Civil Code is used as a supplemental source of law in interpreting the insurance contract. *Puerto Rico Housing Bank v. Pagan Insurance Underwriters,* 11 Official Translations 3, 8 (1981); 111 D.P.R. 1, 6; *Gonzalez v. John Hancock Mutual Life Insurance Co.,* 927 F.2d 659, 669 (1st Cir.1991). Article 1233 of the Puerto Rico Civil Code provides that when "the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed." 31 L.P.R.A. § 3471.

*Nieves v. Intercontinental Life Ins. Co.,* 964 F.2d 60, 63 (1st Cir.1992). As a general matter, ordinary rules of construction apply to incontestability clauses. 1A J. Appleman, *Insurance Law and Practice,* § 311 at 313 (1981) (hereinafter *Appleman*); 18 G. Couch, *Couch on Insurance 2d* § 72:9 (rev. ed. 1983) (hereinafter *Couch*).

■ The first interpretive waymark, of course, is the language of the parenthetical tolling provision itself: *"excluding any period during which you are disabled,"* where we find no ambiguity whatever. Rather, the parenthetical straightforwardly tolls the running of the two-year period for the duration of any disability commencing within it. When "the wording of the contract is explicit and its language is clear, its terms and condi-

---

**2.** Contrary to Vélez's novel contention, SMA's cross-motion for summary judgment does not estop it from claiming that genuine issues of material fact precluded summary judgment *against SMA.*

**3.** The Puerto Rico Insurance Code authorizes the following clause in disability-insurance policies:
INCONTESTABLE: After this policy has been in force for a period of three years during the

lifetime of the insured (*excluding any period during which the insured is disabled* ), it shall become incontestable as to the statements contained in the application.
P.R.Laws Ann. tit. 26, § 1606 (1977). Deviations from the Insurance Code model (*e.g.,* SMA's use of a two-year, rather than a three-year, contestability period) are permitted provided they benefit the insured. *Id.* §§ 1113(2), 1604 (1977).

tions are binding on the parties." *Nieves*, 964 F.2d at 63 (citations omitted).

Related provisions within the four corners of the policy likewise counsel a common-sense reading of the plain language of the tolling provision. First, the term "disability" is defined in the policy as "injury or sickness [that] makes you unable to engage in your regular occupation." Thus, the date of disability is the relevant tolling event. There is nothing to suggest that post-disability notification of the insurer is germane to the tolling inquiry. Second, our interpretation of the parenthetical in paragraph (a) comports precisely with the language in companion paragraph (b):

> (b) [SMA] will not be able to reduce or deny any claim for *disability which starts* after two years from the date of issue because the disease or physical condition existed before the date of issue.

(Emphasis added.) The hand-and-glove fit between these coordinate provisions is completely undone by Vélez's interpretation.

The parenthetical is adapted from a standardized incontestability clause mandated by statute in at least forty-five states, the District of Columbia, and the U.S. Virgin Islands, in addition to Puerto Rico. We consider it significant that every other court that has considered the matter to date has arrived at the interpretation urged by SMA, and no court has suggested a notification requirement. *See, e.g., Wischmeyer v. Paul Revere Life Ins. Co.*, 725 F.Supp. 995, 998 (S.D.Ind. 1989) (*"This clause of the contract is plain and unambiguous."*) (emphasis added); *Bronson v. Washington Nat'l Ins. Co.*, 59 Ill.App.2d 253, 207 N.E.2d 172, 176 (1965) (Holding contestability period tolled at onset of insured's disability); *Taylor v. Metropolitan Life Ins. Co.*, 106 N.H. 455, 214 A.2d 109, 114–15 (1965) (same); *Standard Security*

*Life Ins. Co. v. Klamer*, 27 A.D.2d 656, 276 N.Y.S.2d 645, 646 (1967) (same); *Union Mut. Life Ins. Co. v. Kevie*, 13 A.D.2d 755, 215 N.Y.S.2d 298 (1961) (same).

An understanding of the origins and function of incontestability clauses likewise confirms the construction urged by SMA. In mandating a contractual period of repose on insurer challenges to disability-income insurance policies predicated on alleged misrepresentations in the insurance application, legislatures accommodate the interests of both insurers and insureds, based on two competing policies: promoting insurance security and deterring insurance fraud. *See Appleman*, § 311 at 305–306; *see also Couch*, § 72:16. Thus, after the contestability period has run, the insurer cannot withdraw insurance protection *even though* the insurance application contained misstatements. On the other hand, to better forfend against the occasional insured who would perpetrate fraud at the expense of insurers and their fellow insurance consumers, the contractual limitations period is tolled for the duration of any disability arising within the relatively brief contestability period following issuance of the policy.[4]

## 2. *The Date of Disability.*

■ As an alternate basis for summary judgment, the district court specifically found that Vélez did not *become disabled* until March 1, 1989, more than two years after the policy was issued on November 24, 1986. Thus, even under our reading of the incontestability clause, SMA would be barred from asserting the present challenge.

The district court based its disability-date finding exclusively on a letter from IBM, stating that Vélez was employed from August 9, 1971 until March 1, 1989, when he went on

---

**4.** As the *Wischmeyer* court explained:

The clause protects an insured who is healthy enough to work throughout the two-year period from losing the security of disability insurance because of some prior condition that might eventually disable him. On the other hand, the insurer is protected in that it is not precluded from denying benefits to an applicant whose pre-existing condition is so bad that he becomes disabled during the two-year period.

*Wischmeyer*, 725 F.Supp. at 1001–02.

Under the "notification" theory adopted below, however, a dishonest insured could frustrate this legislative intent completely, simply by waiting out the contestability period before submitting a claim. Thus, in our view the parenthetical clause clearly reflects the legislature's rejection of the "notification" theory, based on policy grounds well within its exclusive domain. *Id.* at 1004.

"medical disability."[5] The IBM letter did not stand alone, however. Vélez's claim for disability benefits under the SMA policy included a statement from his own physician indicating that Vélez became "totally disabled (unable to work)" in October of 1988, within two calendar years after the policy issued. The summary judgment record further reveals that Vélez filed a disability claim with the Social Security Administration on June 5, 1989, in which he represented (in the words of the administrative law judge) that "he became disabled as of November 2, 1987 due to Multiple Sclerosis." Given this evidence, and the reasonable inferences therefrom, *Goldman*, 985 F.2d at 1116, the factual dispute over the onset of Vélez's disability simply was not amenable to summary disposition.

### 3. *The Duty to Investigate.*

As its third ground for summary judgment, the district court held SMA estopped from contesting the policy because (1) Ortiz knew of Vélez's multiple sclerosis before the policy issued; (2) Ortiz was SMA's agent; (3) Ortiz's knowledge is imputable to SMA; (4) Vélez's health problems would have prompted a reasonably prudent insurer to investigate Vélez's preexisting condition; and (5) SMA failed to investigate during the contestability period. Even assuming that the many subsidiary factual and legal elements in its conclusion were properly resolved under our summary judgment jurisprudence, the district court's conclusion cannot stand. Its thesis that SMA failed to meet its duty to investigate "*during the contestability period*" collapses in view of our determination, *see supra* at pp. 875–76, that the two-year contestability period was tolled by Vélez's intervening disability.

Further, the district court ruling falters on its impermissible factual premise that SMA was on notice of "certain medical conditions" which would have prompted a prudent insurer to investigate. Our summary judgment jurisprudence precludes judicial resolution of genuine issues of material fact. *Goldman*, 985 F.2d at 1116. No doubt what Ortiz knew about Vélez's medical condition, *see supra* at p. 874, may be hotly contested at trial. At the summary judgment stage, however, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be)...." *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987). Drawing all reasonable inferences favorable to SMA, as we must, *see Goldman*, 985 F.2d at 1116, it is inconceivable to us that Vélez's wife's dinner-party comment about her husband's "*achaques*" ("aches and pains") reasonably could be considered conclusive evidence sufficient to require a prudent insurer to act on any general duty to investigate during the contestability period.[6]

Given the plain language in the incontestability clause and the inconclusive state of the summary judgment record, the legal and factual grounds for holding that SMA violated a duty to investigate during the contestability period were untenable.

### III

### *CONCLUSION*

For the foregoing reasons, the judgment of the district court must be vacated and the case must be remanded for further proceedings.

---

**5.** The IBM letter states: "This will serve as certification that Mr. Julio Velez was employed by [IBM] from August 9, 1971 until he went on Medical Disability on March 1, 1989."

**6.** The two cases the district court relied on for its holding that insurers have a general "duty to investigate" during the contestability period, *Rodriguez v. John Hancock*, 110 D.P.R. 1, 10 Official Translations 913 (1980), and *Heirs of Roche v. Banco de la Vivienda*, 103 D.P.R. 656, 3 Official Translations 1 (1975), are inapposite. Both involved attempts to contest policies after the expiration of the contestability period. Neither case stands for the proposition that insurers have a general duty to investigate, nor that a failure to investigate might estop an insurer from challenging a policy, *during the contestability period*.

*The district court judgment is vacated and the case is remanded for further proceedings consistent herewith. So ordered.*