USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-2164 HECTOR GUZMAN-RIVERA, ET AL., Plaintiffs, Appellants, v. HECTOR RIVERA-CRUZ, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Gilberto Gierbolini, U.S. District Judge] ___________________ ____________________ Before Cyr, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Victoria A. Ferrer-Kerber, with whom Alvaro R. Calder n, Jr. and _________________________ _______________________ Law Offices of Alvaro R. Calder n, Jr. were on brief for appellants. ______________________________________ Jos R. Gaztambide-A eses, with whom Benito I. Rodr guez-Mass __________________________ __________________________ and Law Offices of Gaztambide & Plaza were on brief for appellees. _________________________________ ____________________ July 13, 1994 ____________________ CYR, Circuit Judge. Plaintiffs Hector Guzman Rivera CYR, Circuit Judge. ______________ ("Guzman") and family members appeal a district court judgment dismissing Guzman's civil rights action against various present and former officials of the Commonwealth of Puerto Rico as time- barred. We vacate the summary judgment entered by the district court and remand for further proceedings. I I BACKGROUND BACKGROUND __________ On Christmas Eve, 1987, the manager of a Domino's Pizza establishment in Carolina, Puerto Rico, was shot and killed during an armed robbery. Eyewitnesses identified Guzman as the perpetrator. Guzman, who was living in New York at the time, was extradited, tried, convicted, and sentenced to 119 years' impris- onment. In the wake of the conviction, Guzman's father, Hector Guzman Fernandez, instigated an independent investigation which yielded an "informant" who claimed to have provided the weapon used in the robbery and to know the identity of the real culprit. Guzman's father, proof in hand, set out on August 21, 1989, to secure his son's exoneration. During the fall of 1989 and the spring of 1990, Guz- man's father repeatedly corresponded and met with defendants- appellees Hector Rivera Cruz, Secretary of Justice, and either Luis Feliciano Carreras, Director of the Prosecutor's Office, or his successor, Pedro Geronimo Goyco (collectively, the defen- dants). During an investigation conducted by the Civil Rights 2 Division of the Puerto Rico Justice Department in March 1990, an eyewitness recanted her identification; the informant confirmed that Guzman was not the killer and identified the real perpetra- tor; and Guzman's mother attested that her son was in New York at the time of the murder. The mounting evidence of Guzman's innocence notwith- standing, even after the Civil Rights Division issued its own investigative report concluding that Guzman had not committed the murder, the Director of the Prosecutor's Office refused to authorize Guzman's release. Indeed, at a meeting in April 1990 Guzman's father was informed that the Prosecutor's Office would take no corrective action regarding Guzman until the actual perpetrator had been taken into custody. At or about June 15, 1990, Guzman filed a motion for new trial with the San Juan Superior Court and served the Secre- tary of Justice with a motion for release. Before the Secretary of Justice acted on the motion for release, the Governor of Puerto Rico, in response to a request from Guzman's father, directed Guzman's release on June 15, 1990. Guzman instituted the present action on June 14, 1991. Defendants countered with a motion to dismiss, see Fed. R. Civ. ___ P. 12(b)(6), asserting prosecutorial immunity and the statute of limitations. The district court later entered summary judgment for all defendants-appellees, see Fed. R. Civ. P. 12(b), 56, on ___ the ground that the action was time-barred under the applicable one-year statute of limitations. On appeal, Guzman argues that 3 summary judgment was improvidently granted on the limitations defense because a trialworthy issue existed as to the date on which the section 1983 claim accrued. We agree. II II DISCUSSION DISCUSSION __________ We review a grant of summary judgment de novo, employ- __ ____ ing the same criteria incumbent upon the district court in the first instance. Velez-Gomez v. SMA Life Assur. Co., 8 F.3d 873, ___________ ___________________ 874-75 (1st Cir. 1993). Summary judgment is appropriate where the record, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Id. ___ Although it is clear that the one-year personal injury limitation applies to the present action, see, e.g., Lafont- ___ ____ _______ Rivera v. Soler-Zapata, 984 F.2d 1, 2 (1st Cir. 1993); see also ______ ____________ ___ ____ P.R. Laws Ann. tit. 31, 5298 (1991), federal law controls the accrual of section 1983 claims. Lafont-Rivera, 984 F.2d at 3. _____________ The first step in fixing accrual is to identify the actual injury of which the plaintiff complains. Heck v. Humphrey, 62 U.S.L.W. ____ ________ 4594, 4598 (U.S. June 24, 1994) (prescribing federal accrual analysis in section 1983 actions predicated on the alleged invalidity of an underlying criminal conviction); see also ___ ____ LaFont-Rivera, 984 F.2d at 3. Guzman essentially contends that _____________ the defendant officials owed him a constitutionally-based duty to investigate substantial post-conviction allegations of innocence 4 and to release him from confinement upon presentation of an unspecified quantum of exculpatory evidence. The district court indulged Guzman's theory for purposes of its limitations ruling. Although we note scant authority for the theory,1 we need not determine its viability at this juncture because the actual injury implicitly alleged is that Guzman was wrongfully convicted ______ and/or wrongfully detained after defendants were apprised of the exculpatory evidence. We consider the accrual issue in this light. The Supreme Court recently clarified the circumstances in which section 1983 can be used to redress alleged constitu- tional deprivations sounding in malicious prosecution, false ____________________ 1Guzman relies on a fragment of dicta from Maslauskas v. __________ United States, 583 F. Supp. 349 (D. Mass. 1984) a Federal Tort _____________ Claims Act case wherein the court observed that "in certain circumstances the government owes prisoners a continuing duty to uncover 'the absence of a constitutionally adequate basis for confinement,'" id. at 351 (citing Steubig v. Hammel, 446 F. Supp. ___ _______ ______ 31, 33 (M.D. Pa. 1977)) but ignores the very next clause in the district court opinion which emphasizes that the government generally "does not owe the prisoner a continuing duty to review and re-review" the basis for confinement, id. Moreover, Steubig, ___ _______ like O'Connor v. Donaldson, 422 U.S. 563 (1975), involved an ________ _________ attempt to use section 1983 to redress excessive confinement arising from an inaccurate assessment of the progress of a patient involuntarily committed to a mental health facility. Of course, as the district court itself suggested, see Maslauskas, ___ __________ 583 F. Supp. at 351, the government's "continuing duty to review and re-review" the basis for confinement is more clear in those circumstances. Other cases relied on by Guzman are likewise inapposite. See Lewis v. O'Grady, 853 F.2d 1366 (7th Cir. 1988) ___ _____ _______ (section 1983 used to redress excessive confinement arising from mistaken incarceration of plaintiff after judicial exoneration); Haygood v. Younger, 769 F.2d 1350 (9th Cir. 1985) (en banc) _______ _______ __ ____ (section 1983 used to redress excessive confinement arising from miscalculation of sentence), cert. denied, 478 U.S. 1020 (1986). _____ ______ 5 imprisonment, and false arrest, by outlining the federal accrual analysis applicable to claims akin to the present: [I]n order to recover for damages for alleg- edly unconstitutional conviction or imprison- ment, or for other harm caused by actions __ ___ _____ ____ ______ __ _______ whose unlawfulness would render a conviction _____ ____________ _____ ______ _ __________ or sentence invalid, a 1983 plaintiff must __ ________ _______ prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determina- tion, or called into question by a federal court's issuance of a writ of habeas corpus. * * * [Accordingly,] a 1983 cause of action ___________ _ _ ____ _____ __ ______ for damages attributable to an unconstitu- ___ _______ ____________ __ __ ___________ tional conviction or sentence does not accrue ______ __________ __ ________ ____ ___ ______ until the conviction or sentence has been _____ ___ __________ __ ________ ___ ____ invalidated. ___________ Heck, 62 U.S.L.W. at 4598 (emphasis added). We now apply the ____ Heck analysis to the present action. ____ It is clear from the summary judgment record that Guzman was released from prison on June 15, 1990, less than one year prior to the filing of the instant action. Therefore, if the conviction was "reversed[,] . . . expunged . . . [or] held invalid," id., by competent executive or judicial action2 not ___ ___ earlier than June 14, 1990, an actionable section 1983 claim "for _______ ____ harm caused by actions whose unlawfulness would render [his] conviction or sentence invalid," id., would not be time-barred. ___ ____________________ 2Guzman's brief on appeal represents that his release was _____ prompted by the intervention of the Governor of Puerto Rico. However, the official record of the Puerto Rico Administration of Corrections indicates that Guzman was released on bond June 15, 1990, after his motion for new trial had been granted. The record does not disclose whether a new trial has ever been conducted, nor whether any governmental action has been taken to expunge or invalidate the conviction. 6 The summary judgment proceedings included in the appellate record do not enable a determination as to whether, and if so, when, Guzman's conviction was undone. Consequently, as the accrual issue cannot be resolved on the present record, summary judgment was premature. See, e.g., Greenburg v. Puerto Rico Maritime ___ ____ _________ _____________________ Shipping Auth., 835 F.2d 932, 934 (1st Cir. 1987) (if material _______________ factual issues require resolution before pivotal legal issue can be decided, summary judgment must be vacated). III III CONCLUSION CONCLUSION __________ The district court judgment must be vacated. The case shall be remanded to permit the district court to determine whether Guzman's conviction was ever invalidated as required under Heck. See Heck, 62 U.S.L.W. at 4598. If not, the section ____ ___ ____ 1983 claims against all defendants shall be dismissed, without prejudice, as premature. Otherwise, any actionable section 1983 claim shall be deemed to have accrued not earlier than the date on which Guzman's conviction was reversed, expunged or otherwise determined invalid, see id. ___ ___ The district court judgment is vacated; the case is ___ ________ _____ ________ __ _______ ___ ____ __ remanded for further proceedings consistent with this opinion; ________ ___ _______ ___________ __________ ____ ____ _______ costs to appellants. _____ __ __________ 7