USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-2237 FEDERAL DEPOSIT INSURANCE CORPORATION, etc., Plaintiff, Appellee, v. BAY STREET DEVELOPMENT CORP., ET AL., Defendants, Appellants. ________ WILLIAM J. BYRNE, JR., AND JOSEPH F. TIMILTY, Defendants, Appellants. No. 93-2238 FEDERAL DEPOSIT INSURANCE CORPORATION, etc. Plaintiff, Appellee, v. BAY STREET DEVELOPMENT CORP. AND JOHN RYAN, Defendants, Appellants. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________ ____________________ ____________________ Breyer,* Chief Judge, ___________ Cyr and Boudin, Circuit Judges. ______________ ____________________ Frank L. McNamara, Jr., with whom J. Alan Mackay was on brief for ______________________ ______________ Chapter 7 Trustee, et al. Jeffrey M. Lovely, with whom Robert A. Murphy and Casner & __________________ __________________ _________ Edwards were on brief for William Byrne and Joseph Timilty. _______ James W. Stoll, with whom Emanuel Alves and Brown, Rudnick, Freed ______________ _____________ _____________________ & Gesmer, P.C. were on brief for FDIC. ______________ ____________________ August 26, 1994 ____________________ ____________________ *Chief Judge Stephen Breyer heard oral argument in this matter, but did not participate in the drafting or the issuance of the panel opinion. The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. 46(d). CYR, Circuit Judge. The Federal Deposit Insurance CYR, Circuit Judge. _____________ Corporation (FDIC), as receiver, obtained summary judgment against defendants-appellants in an action to recover amounts due a failed savings bank on various loans and loan guaranties. On appeal, defendants contend that their defenses to FDIC's claims are not barred by D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447 _____________________ ____ (1942), and its statutory counterpart, 12 U.S.C. 1823(e). We affirm the district court judgment. I I BACKGROUND1 BACKGROUND __________ In March 1987, defendant-appellant Bay Street Develop- ment Corporation (Bay Street) entered into a Loan Agreement with First Mutual Bank for Savings (FMB) for the purpose of financing a condominium construction project. The Loan Agreement set the maximum loan principal at $9 million, with disbursements to be _______ made over time subject to certain conditions specified in the Loan Agreement. Contemporaneously, the Bay Street principals, defendants-appellants John Ryan,2 William J. Byrne and Joseph F. Timilty, jointly and severally guarantied the construction loan to the extent of $2.5 million (the Multiple Guaranty). Pursuant ____________________ 1The material facts are related in the light most favorable to defendants-appellants, against whom summary judgment was granted. See Velez-Gomez v. SMA Life Assur. Co., 8 F.3d 873, ___ ___________ ____________________ 874-75 (1st Cir. 1993). 2J. Christopher Robinson, trustee in bankruptcy of the chapter 7 estate of John Ryan, has been substituted as a party. See Fed. R. App. P. 43. ___ 3 to a written side agreement, Ryan promised to indemnify Byrne and Timilty for any liability incurred under the Multiple Guaranty (the Indemnification Agreement). At the time the Indemnification Agreement was executed, Ryan had a net worth of $5.7 million. FMB's records contain no reference to the Indemnification Agree- ment. In June 1987, Bay Street failed to satisfy certain conditions which constituted default events under the Loan Agree- ment. Bay Street attempted to negotiate with FMB to cure the defaults. Finally, at a meeting on February 6, 1989 (the Arnone meeting), FMB vice-president Richard Arnone informed Ryan that FMB would release the undisbursed balance of the $9 million construction loan, notwithstanding any past or future Bay Street defaults, if Ryan would provide FMB with an additional guaranty (the Additional Guaranty). On February 23, Ryan executed the Additional Guaranty, which expressly stated that he was guaranty- ing an additional $6.5 million in order "to induce [FMB] to make further loan advances pursuant to the [L]oan [A]greement." _______ ____ ________ ________ __ ___ ______ ___________ (emphasis added). FMB thereupon advanced Bay Street another $1.5 million, bringing total advances under the Loan Agreement to $6 million. By May 1989, Bay Street had yet to cure its previous defaults under the Loan Agreement. At about the same time, Ryan notified FMB that he was repudiating both the Multiple Guaranty and the Additional Guaranty. As Ryan and Bay Street were in default, FMB demanded payment in full pursuant to the terms of 4 the Loan Agreement and the loan guaranties. The defendants rejected FMB's demand. In June 1989, FMB initiated the present action in Massachusetts Superior Court against Bay Street for breach of the Loan Agreement (Count 1); Ryan, Byrne and Timilty for breach of the Multiple Guaranty (Count 2); and Ryan for breach of the Additional Guaranty (Count 3). Bay Street and Ryan filed coun- terclaims for, inter alia, fraud in the inducement and breach of _____ ____ the Arnone meeting agreement. In April 1990, the superior court granted summary judgment for FMB on Counts 1 and 2, rejecting the defense interposed by Byrne and Timilty that FMB had released them from the Multiple Guaranty by accepting the Additional Guaranty, which effected an unauthorized alteration of the Loan Agreement. The superior court denied summary judgment on Count 3, on the ground that a genuine dispute remained as to whether FMB had induced the Additional Guaranty through fraud. In June 1991, after FMB had been placed in receiver- ship, FDIC removed the action to federal district court, then moved for summary judgment on Count 3 and on the remaining Bay Street and Ryan counterclaims. Ryan and Bay Street countered with a motion for reconsideration of the superior court's summary judgment rulings on Counts 1 and 2. In due course, the district court granted summary judgment for FDIC on Count 3 and on defen- 5 dants' counterclaims, and denied the motion for reconsideration on Counts 1 and 2. This appeal ensued.3 II II DISCUSSION DISCUSSION __________ A. Summary Judgment Standard A. Summary Judgment Standard _________________________ A state court summary judgment order may be modified or vacated following removal of the action, see Hyde Park Partners, ___ ___________________ L.P. v. Connolly, 839 F.2d 837, 842 (1st Cir. 1988); 28 U.S.C. ____ ________ 1450, upon a determination that it does not comport with Fed. R. Civ. P. 56, see RTC v. Northpark Joint Venture, 958 F.2d 1313, ___ ___ _______________________ 1316 (5th Cir. 1992), cert. denied, 113 S. Ct. 963 (1993). As _____ ______ with any summary judgment order, id., we review the district ___ court ruling de novo, employing the identical summary judgment __ ____ criteria incumbent upon the court below, Velez-Gomez, 8 F.3d at ___________ 874-75. Thus, summary judgment will be upheld if the record, viewed in the light most favorable to the nonmoving party, discloses no trialworthy issue of material fact, and the moving ____________________ 3Ryan challenges the district court order insofar as it rejected his defense to the Additional Guaranty, but does not appeal from the dismissal of his counterclaims. Byrne and Timilty challenge the rejection of their defense to the Multiple Guaranty. Bay Street's claims on appeal track Ryan's, save that Bay Street also asserts that the district court erred in finding no trialworthy issue relating to Bay Street's state-law counter- claims charging bad faith and unfair dealing. These latter claims are deemed waived, as they are unsupported by any devel- oped argumentation. See, e.g., RTC v. Gold, F.3d , ___ ____ ___ ____ ____ ____ __ (1st Cir. 1994) [No. 94-1080, slip op. at 4 (1st Cir. July 21, 1994)]. 6 party has demonstrated its entitlement to judgment as a matter of law. Id. ___ 7 B. No. 93-2237: Bay Street and Ryan4 B. No. 93-2237: Bay Street and Ryan _________________________________ Bay Street and Ryan contend on appeal, as before the district court, that a material issue of fact remained on Count 3, concerning whether FMB, through Arnone, orally promised to release the entire undisbursed balance of its loan commitment ______ under the Loan Agreement, notwithstanding any past and future defaults by Bay Street. Bay Street and Ryan argue that the following language in the Additional Guaranty was ambiguous, viz., "Ryan . . . to induce [FMB] to make further loan advances ____ pursuant to the loan agreement referred to below . . . hereby unconditionally guarantees . . . $6,500,000." Based on Ryan's affidavit attesting to the Arnone meeting, see supra p. 4, Bay ___ _____ Street and Ryan argue that a jury reasonably could find that the above-quoted language represented a commitment by FMB to advance the entire undisbursed balance ($4.5 million) it originally agreed to lend under the Loan Agreement, without regard to past or future defaults by Bay Street. Their defense is not sustainable against FDIC, see ___ D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447 (1942); 12 U.S.C. _____________________ ____ 1823(e), absent a reasonably explicit written agreement in _______ FMB's records to this effect. See FSLIC v. Two Rivers Assocs., ___ _____ ____________________ Inc., 880 F.2d 1267, 1275-76 (11th Cir. 1989) (on similar facts, ____ inquiring whether writings contained explicit acceptance of the ____________________ 4We bypass the jurisdictional question raised by FDIC in connection with this appeal. See Norton v. Matthews, 427 U.S. ___ ______ ________ 524, 532 (1976) (jurisdictional question may be passed over where ruling on merits would lead to same result). See also note 2 ___ ____ supra. _____ 8 obligation to fund the entire project). The only writing argu- ably evidencing an ambiguous commitment of this type is the Additional Guaranty itself, which merely states that Ryan provid- ed the Additional Guaranty "to induce FMB to make further loan advances." Bay Street and Ryan implicitly concede as much by maintaining that "the meaning and import of the [quoted] phrase is not clear from the face of the document drawn by [FMB] in which it appears, or from any other document referred to there- in." Absent extrinsic evidence, the Additional Guaranty cannot be read to require FMB to advance all loan funds remaining ___ undisbursed under the Loan Agreement. See Sweeney v. RTC, 16 ___ _______ ___ F.3d 1, 5 (1st Cir. 1994) (per curiam) (contract terms were "far ___ ______ too ambiguous, absent extraneous support, to establish an agree- ment to fund further construction. At most, they reflect an intention to provide further funds.") (footnote omitted), peti- _____ tion for cert. filed, 62 U.S.L.W. 3775 (U.S. May 2, 1994) (No. ____ ___ _____ _____ 93-1782); see also FDIC v. Hamilton, 939 F.2d 1225, 1231 (5th ___ ____ ____ ________ Cir. 1991) (the 1823(e) mandate that promises be "in writ- ing" only permits enforcement of obligations set out on the face of the instrument). And, of course, extrinsic evidence of additional terms is inadmissible against FDIC. See Two Rivers, ___ __________ 880 F.2d at 1276 ("[O]ne ambiguous reference to a further con- struction loan is not sufficient to allow [defendant] to advance defenses against the FSLIC about an agreement to fund the entire project."); RTC v. Daddona, 9 F.3d 312, 319 (3d Cir. 1993) ___ _______ 9 ("[T]he essential terms . . . [of an agreement must] appear plainly on the face of that obligation.").5 Ryan counters that his breach of contract defense is based on the bilateral nature of the obligations assumed under the Additional Guaranty. See Howell v. Continental Credit Corp, ___ ______ _______________________ 655 F.2d 743, 746-47 (7th Cir. 1981) (D'Oench inapplicable where _______ face of instrument whose terms FDIC seeks to enforce manifests bilateral obligations that form the basis of the opposing party's defense). Howell is inapposite to the present context, however. ______ The defenses relied on in Howell were in no respect ______ dependent on parol agreements, see id. at 747, whereas Ryan ___ ___ concedes that the language in the Additional Guaranty "to induce [FMB] to make further loan advances" could not have afforded FDIC explicit notice of the specific terms of the ________ _____ alleged FMB waiver of past and future defaults, absent resort to the parol evidence arising out of the Arnone meeting. See supra ___ _____ pp. 4, 7. Thus, reliance on the so-called Howell exception is ______ misplaced. See FDIC v. O'Neil, 809 F.2d 350, 354 (7th Cir. 1987) ___ ____ ______ ____________________ 5Altogether apart from D'Oench, Duhme, evidence of prior _______________ negotiations is inadmissible under Massachusetts law to alter or contradict the terms of a written agreement. See Boston Edison ___ _____________ Co. v. Federal Energy Reg. Comm'n, 856 F.2d 361, 365 (1st Cir. ___ ___________________________ 1988) (Massachusetts parol evidence rule). The Additional Guaranty expressly provides that "[u]pon the occurrence of any event of Default (as that term is defined in the Loan Agreement) __ ____ ____ __ _______ __ ___ ____ _________ in the payment or performance of any of [Bay Street's] obliga- tions, [Ryan's] obligations and liabilities hereunder shall become immediately due." (emphasis added). This language would appear to foreclose use of the alleged Arnone meeting promise to show that FMB waived its contractual right to declare later defaults. 10 (Howell exception inapplicable where bank's obligation did not ______ appear explicitly on face of document FDIC sought to enforce); accord Hamilton, 939 F.2d at 1231 (Howell exception inapplicable ______ ________ ______ as face of note did not manifest bilateral obligations); Two ___ Rivers, 880 F.2d at 1275 ("This is not a case like [Howell] where ______ ______ the leases on which the suit was based 'clearly manifest[ed] the bilateral nature of the lessee's and lessor's rights and obliga- tions.'"). The legislative policy underlying the D'Oench doctrine _______ corroborates the district court ruling as well. A primary aim of D'Oench is to enable bank examiners to rely on bank records in _______ _______ assessing the value of bank assets. See Langley v. FDIC, 484 ___ _______ ____ U.S. 86, 91 (1987). There is no indication that the Arnone meeting was mentioned, let alone memorialized, in any FMB record. See Timberland Design, Inc. v. First Serv. Bank for Sav., 932 ___ ________________________ __________________________ F.2d 46, 48 (1st Cir. 1991) (per curiam) ("D'Oench, Duhme . . . ___ ______ ______________ favors the interests of depositors and creditors of a failed bank, who cannot protect themselves from secret agreements, over the interests of borrowers, who can.") (citations omitted). The district court did not err in awarding FDIC summary judgment against Bay Street and Ryan. C. No. 93-2238: Byrne and Timilty C. No. 93-2238: Byrne and Timilty _______________________________ Appellants Byrne and Timilty challenge the summary judgment order on the ground that the Additional Guaranty ac- quired by FMB undermined the terms of the Multiple Guaranty and 11 the Loan Agreement without their consent.6 Cf. Provident Co-Op ___ _______________ Bank v. James Talcott, Inc., 260 N.E.2d 903, 910 (Mass. 1970) ____ ____________________ ("[A] substantial change in the conditions to which a bond relates, made without the knowledge and consent of the surety, discharges him from further liability.") (applying Mass. law; citations omitted); FDIC v. Manion, 712 F.2d 295, 297 (7th Cir. ____ ______ 1983) (noting general acceptance of this rule). Their resource- ful theory is that the Indemnification Agreement, as a practical matter, effectively insulated them from risk under the Multiple Guaranty, see supra pp. 3-4, because Ryan's net worth, approxi- ___ _____ mating $5.7 million at the time the Indemnification Agreement was executed, provided ample wherewithal to fund Ryan's commitment to indemnify them for any liability incurred under the Multiple Guaranty. But because the Additional Guaranty increased the total exposure on Ryan's personal guaranties to $9 million (the $2.5 million Multiple Guaranty plus the $6.5 million Additional Guaranty), well beyond his total net worth, Byrne and Timilty insist that their actual exposure on the Multiple Guaranty was ______ thereby increased from zero to $2.5 million. Thus, they argue, FMB materially modified the Multiple Guaranty to their detriment by obtaining the Additional Guaranty from Ryan. ____________________ 6Byrne and Timilty make the related argument that FMB breached the Multiple Guaranty provision prohibiting its alter- ation without the written consent of all three guarantors. As this argument was never raised, either in state court or the district court, we decline to consider it. See Gold, slip op. at ___ ____ 4. 12 The problem with this appealing argument is that it is premised on a revisionist view of the Indemnification Agreement; hence, it too is precluded under the D'Oench, Duhme doctrine, due ______________ to the absence of any FMB record substantiating an obligation on the part of FMB to refrain from undermining the Multiple Guaranty in this manner. Further, even Byrne and Timilty make no claim that either Ryan or FMB was under any contractual or other legal ______ __ obligation to refrain from increasing Ryan's liability to FMB or to obtain the approval of Byrne and Timilty before doing so. See ___ D'Oench, Duhme & Co., 315 U.S. at 460. ____________________ III III CONCLUSION CONCLUSION __________ For the foregoing reasons, the district court judgment must be affirmed. Affirmed. Affirmed. ________ 13