December 24, 1996 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

No. 96-1278
 MARIA DE LOS ANGELES SANCHEZ,

 Plaintiff, Appellant,

 v.

 CARLOS ALVARADO, ET AL.,

 Defendants, Appellees.

  

 ERRATA SHEET

 The opinion of this Court, issued December 2, 1996, is
amended as follows:

 P.7, l.4, should read: . . . relief could be granted . . . 

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

No. 96-1278

 MARIA DE LOS ANGELES SANCHEZ,

 Plaintiff, Appellant,

 v.

 CARLOS ALVARADO, ET AL.,

 Defendants, Appellees.

  

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Salvador E. Casellas, U.S. District Judge] 

  

 Before

 Cyr and Boudin, Circuit Judges, 

 and Ponsor,* U.S. District Judge. 

  

 Edwin Prado, with whom Pedro Salicrup was on brief for appellant. 
 Edgardo Rodriguez Quilichini, Assistant Solicitor General, 
Department of Justice, with whom Carlos Lugo Fiol, Solicitor General, 
and Edda Serrano Blasini, Deputy Solicitor General, were on brief for 
appellees.

  

 December 2, 1996
  

  

 *Of the District of Massachusetts, sitting by designation.

 CYR, Circuit Judge. Plaintiff Maria de los Angeles CYR, Circuit Judge.  

Sanchez ("Sanchez") appeals a summary judgment ruling rejecting

her civil rights claim, see 42 U.S.C. 1983, alleging liability 

on the part of certain supervisory personnel at Puerto Rico

Electric Power Authority ("PREPA") for failing to take appropri-

ate action against defendant-appellee Omar Santiago, whose

persistent harassment prompted Sanchez to tender her resignation.

We affirm the district court judgment.

 I I

 BACKGROUND1 BACKGROUND 

 The pattern of harassment began when Santiago, a PREPA

employee, telephoned Sanchez at her office in September 1988 and

invited her to dinner. A few days after Sanchez declined the

invitation she received a call from another PREPA employee,

informing her that she should expect to hear from Santiago again

since he had an ongoing bet that he would succeed in his quest.

Later that month, Santiago approached Sanchez and stated that

they should talk. As Sanchez walked away, Santiago exclaimed

that she would see what he was capable of and if she complained

about his behavior he would cause her harm. 

 The first supervisor with whom Sanchez discussed

Santiago's behavior, defendant-appellee Ramon Figueroa, tried to

persuade her not to file a formal charge with PREPA's Equal

Employment Opportunity Office (EEOO), stating that everyone was
  

 1All material facts in genuine dispute are related in the
light most favorable to Sanchez. Velez-Gomez v. SMA Life Assur. 
Co., 8 F.3d 873, 875 (1st Cir. 1993) 

 3

entitled to one mistake.2 Upon learning that Santiago had

already been the subject of a sexual harassment complaint by

another female employee, however, Ramon actively encouraged

Sanchez to file a formal complaint.

 On November 15, 1988, defendant-appellee Carlos

Alvarado, then the Director of PREPA, circulated a memorandum on

the subject of sexual harassment, referencing a 1988 statute

prohibiting sexual harassment in the workplace. Within two

weeks, three of Santiago's supervisors, including defendant-

appellee Edwin Miranda Velez, met with him to discuss the inci-

dent reported by Sanchez. After Santiago denied any wrongdoing,

the supervisors informed him of PREPA's sexual harassment policy

and directed him to keep away from the floor on which Sanchez

worked. Upon encountering Sanchez with another female employee

approximately three weeks later, however, Santiago called them

lesbians. Three days later, on December 8, 1988, Sanchez filed

her first complaint with the EEOO. 

 On April 14, 1989, following its investigation into the

first complaint, the EEOO found that Santiago's conduct consti-

tuted sexual harassment, and recommended a reprimand and counsel-

ling. Several weeks later, when Santiago met with supervisors to

discuss the EEOO report, he was reminded that sexual harassment
  

 2We assume, without deciding, that all PREPA supervisory 2
personnel named as defendants were in fact "supervisors" poten-
tially subject to liability under 1983 in that Santiago was
their subordinate. See Lipsett v. University of Puerto Rico, 864 
F.2d 881, 902 (1st Cir. 1988) (holding that a constitutional
violation by a subordinate is a predicate for supervisory liabil-
ity under 1983); see also p. 8 infra (quoting Lipsett). 

 4

was prohibited by law. Once again he was warned that formal

charges would be filed against him for any further harassment and

that he was to stay away from Sanchez while on PREPA property.

 On May 30, 1989, Sanchez filed her second complaint

with the EEOO, relating to Santiago's conduct between May 15 and

19. During that four-day period, Santiago left notes on

Sanchez's automobile, suggesting that they go to a motel; fol-

lowed her on the highway, almost causing a collision; blew kisses

at her; and provoked a fistfight with Sanchez's boyfriend. At

the same time, Sanchez pointed out that Santiago was scheduled to

represent PREPA in a basketball game the following weekend. The

EEOO promptly contacted the person in charge of the team and

recommended that Santiago not be allowed to do so. 

 The EEOO Director, defendant-appellee Amada Nieves, met

with Santiago at his request on July 7, 1989. Ms. Nieves remind-

ed him that the May 24 meeting had been a warning that his

behavior toward Sanchez constituted sexual harassment. She

informed him that Sanchez had since filed a second complaint and

that Nieves herself would interview him about it in the near

future. 

 Within a week, defendant-appellee Camille Galanes, an

assistant to Nieves, telephoned Sanchez at her office and at-

tempted to persuade her to drop the second complaint. Ms.

Galanes suggested that following up on the second complaint might

not be necessary because no further incidents had been reported

after Santiago was reprimanded in connection with the first com-

 5

plaint. Sanchez adamantly disagreed, however, stating that

Santiago had not been at work between May 25 and June 14, and the

mere fact that she had not encountered him in the interim did not

mean his attitude had changed. 

 At a meeting with Ms. Galanes on August 15, 1989,

Santiago expressed concern about the possible adverse effects the

earlier reprimand might have upon his professional future.

Galanes reiterated the warning that Santiago was not to approach

Sanchez on PREPA property.3 Although Santiago continued to deny

any wrongdoing, he assured Galanes that he was "not going to go

anywhere near" Sanchez.4 On October 13, 1989, Director Nieves

telephoned Sanchez on matters relating to Santiago. As Sanchez

was not in, Nieves left a message. The record does not disclose

whether Sanchez returned the call. 

 Sanchez filed her third complaint with the EEOO on

April 3, 1990, stating that she had received four unwanted floral

arrangements from Santiago, three within a span of six days

during December, 1989; that Santiago followed her when she went

  

 3On more than one occasion, EEOO Director Nieves told
Sanchez that she was too "nervous" and that the harassment might
be a product of her perception, noting that Sanchez had no
witnesses. Paradoxically, Nieves even recommended that Sanchez
directly confront Santiago despite the fact that Santiago had
been forbidden to approach Sanchez on PREPA property since
showing fear could only encourage Santiago. 

 4Unchastened, a few weeks later Santiago berated a group of
female employees (Sanchez not included) as "small and dirty."
The EEOO investigated the incident and recommended a formal
charge. Santiago was so informed on December 20, 1989. Ulti-
mately, Santiago was suspended for a week, without pay, based on
these charges.

 6

to lunch, and whistled when she passed him in the workplace

lobby; and that he telephoned her at her office between twelve

and fifteen times a day. The EEOO promptly investigated the

third complaint and, on June 7, 1990, once again recommended that

Santiago's supervisor file formal charges against him. On June

15, 1990, Santiago's supervisor informed him that she was press-

ing charges. 

 Sanchez submitted her resignation on July 2, effective

July 20. Although EEOO Director Nieves met with her on July 18

regarding the status of the third complaint against Santiago,

Sanchez failed to mention her resignation. After Sanchez left

PREPA, the EEOO continued to press ahead with the charges relat-

ing to the third complaint against Santiago, and asked Sanchez to

testify. The charges eventually were dismissed for lack of

evidence after Sanchez failed to appear without explanation.

 Approximately a year later Sanchez commenced the

present action against Santiago and various PREPA supervisory

employees,5 alleging Title VII and civil rights claims, as well

as a pendent tort claim against Santiago under Puerto Rico law.

The district court first dismissed the Title VII claim for

failure to exhaust administrative remedies. The supervisory

liability claims under section 1983 were subsequently dismissed

  

 5The named defendants also included Alvarado's successor, as
the Director of PREPA, Jose Del Valle; Jose Cobian, Director of
Human Services; Luis Crespo Marcial, Supervisor of Planification
and Studies; Maria Hernandez, Executive Assistant to the Execu-
tive Director, as well as "John Doe" defendants whose identities
were unknown. 

 7

as time-barred. After this court reinstated the supervisory

liability claims, Sanchez v. Alvarado, 993 F.2d 1530 (1st Cir. 

1993) (Table), the district court again granted summary judgment

for all supervisory defendants on the ground that Sanchez had not

generated a trialworthy dispute. Finally, the court dismissed

the pendent tort claim and the remaining section 1983 claim

against Santiago for failure to state a claim upon which relief

could be granted since liability on the part of a co-employee

under section 1983 cannot attach unless the alleged harassment

involved misuse of power under the authority of state law.

Sanchez contends on appeal that the district court improperly

resolved a genuine issue of material fact at summary judgment in

dismissing her section 1983 supervisory liability claims.6

 II II

 DISCUSSION DISCUSSION 

1. Standard of Review 1. Standard of Review 

 We review a grant of summary judgment de novo. Velez- 

Gomez, 8 F.3d at 874-75. It will be affirmed if "the pleadings, 

depositions, answers to interrogatories, and the admissions on

file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact, and that the moving party

is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

A dispute is "genuine" if "'the evidence about the fact is such

  

 6As we affirm the dismissal of all federal claims, we do not
reach Sanchez's request for reinstatement of the pendent tort
claim against Santiago. See Newman v. Burgin, 930 F.2d 955, 963 
(1st Cir. 1991).

 8

that a reasonable jury could resolve the point in the favor of

the non-moving party.'" Rivera-Muriente v. Agosto-Alicea, 959 

F.2d 349, 352 (1st Cir. 1992) (quoting United States v. One 

Parcel of Real Property, Etc., 960 F.2d 200, 204 (1st Cir. 

1992)). "A fact is material if it 'carries with it the potential

to affect the outcome of the suit under the applicable law.'"

One National Bank v. Antonellis, 80 F.3d 606, 608 (1st Cir. 1996) 

(quoting Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 

(1st Cir. 1993)). See also Anderson v. Liberty Lobby, Inc., 477 

U.S. 242, 247-48 (1986). Thus, the substantive law defines which

facts are material. Id. at 248. 

2. Supervisory Liability  2. Supervisory Liability 

 Supervisory liability under 42 U.S.C. 1983 cannot be

predicated on the doctrine of respondeat superior. Gutierrez- 

Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989). A 

supervisor can be held liable "only on the basis of her own acts

or omissions." Figueroa v. Aponte-Roque, 864 F.2d 947, 953 (1st 

Cir. 1989). As we have explained: 

 [A] state official . . . can be held liable .
 . . if (1) the behavior of [a] subordinate[]
 results in a constitutional violation and (2)
 the official's action or inaction was "affir-
 mative[ly] link[ed]" to that behavior in that
 it could be characterized as "supervisory
 encouragement, condonation or acquiescence"
 or "gross negligence amounting to deliberate
 indifference."

Lipsett, 864 F.2d 902 (citations omitted). More recently we have 

noted that an "indifference that rises to the level of being

deliberate, reckless or callous, suffices to establish liability

 9

under 1983." Gutierrez-Rodriguez, 882 F.2d at 562. The 

requirement of an "affirmative link" between the behavior of a

subordinate and the action or inaction of the defendant official

"contemplates proof that the supervisor's conduct led inexorably

to the constitutional violation." Hegarty v. Somerset County, 53 

F.3d 1367, 1380 (1st Cir.), cert. denied, 116 S. Ct. 675 (1995).  

3. Summary Judgment  3. Summary Judgment  

 The district court, relying on defendants' summary

judgment proffers, found that "[o]n August 18, 1989 Ms. Sanchez

herself met with Galanes and agreed to close the second com-

plaint, as no further incidents had occurred since May 19, 1989."

Nevertheless, at her deposition Sanchez testified that she had

made it quite clear to Galanes that she did not want the second

complaint closed. See supra p. 4-5. Thus, Sanchez contends that 

the district court improperly resolved a genuine issue of materi-

al fact in awarding summary judgment to defendants. 

 We agree that it was error to resolve the factual

dispute concerning the dismissal of the second complaint adverse-

ly to Sanchez at summary judgment. Velez-Gomez, 8 F.3d at 875. 

Nevertheless, since the supervisory defendants were entitled to

summary judgment as a matter of law in any event, the factual

dispute was immaterial, see Antonellis, 80 F.3d at 608, and the 

error was harmless.

 The defendant supervisors had warned Santiago to stay

away from Sanchez even before the filing of the first formal com-

plaint with the EEOO. The EEOO investigated each and every

 10

complaint Sanchez filed against Santiago. Following the EEOO

investigation of the first formal complaint, Santiago was repri-

manded and ordered not to go near Sanchez on PREPA property.

Even though Ms. Galanes urged Sanchez to drop the second com-

plaint, she did so based on her perception that Santiago had not

engaged in any further harassment after having been reprimanded

and ordered to keep away from Sanchez following the EEOO's

disposition of the first complaint. As a matter of fact, even

though it was only after Sanchez filed her third complaint

alleging yet further harassment by Santiago that the EEOO learned

that the disciplinary action taken in response to the first

complaint had failed to produce the anticipated deterrent effect,

the EEOO nonetheless took prompt action on the second complaint.

EEOO Director Nieves met with Santiago and informed him of the

filing of the second formal complaint. Ms. Galanes met with

Santiago thereafter, warning him of the consequences of any

further harassment, and reminding him that he was not to approach

Sanchez at the workplace. After looking into the second Sanchez

complaint, the EEOO determined that further action was unneces- 

sary for the reasons explained by Galanes. See Hegarty, 53 F.3d 

at 1380 (Sheriff's decision not to discipline deputies, after

full investigation, not deliberate indifference despite contrary

recommendation by Attorney General's advisory panel).

 Given the information available to Ms. Galanes in mid-

July, her effort to persuade Sanchez to drop the second complaint

could not have constituted "encouragement or condonation," let

 11

alone conduct which amounted to "deliberate, reckless, or cal-

lous" indifference. See Guti rrez-Rodriguez v. Cartagena, 882 

F.2d at 562 (1st Cir. 1989); see also Febus-Rodriguez v. 

Betancourt-Lebron, 14 F.3d 87, 92 (1st Cir. 1994); Germany v. 

Vance, 868 F.2d 9, 18 (1st Cir. 1989). The conduct of the EEOO 

in proceeding with the investigation of the second complaint

notwithstanding the intervening actions taken against Santiago in

connection with the first complaint precluded any supportable

finding of "gross negligence" or "reckless and callous indiffer-

ence." See Febus-Rodriguez, 14 F.3d at 92 n.4. Since all the 

harassment forming the basis for the second complaint had oc-

curred prior to the EEOO's disciplinary action on the first

complaint, Sanchez failed to generate a trialworthy issue as to

whether Ms. Galanes' efforts to persuade Sanchez to drop the

second complaint amounted to supervisory action or inaction that

reasonably could be characterized as "supervisory encouragement,

condonation or acquiescence," or "gross negligence amounting to

deliberate indifference." See Lipsett, 864 F.2d at 902.7  

 The alleged actions and inaction by these defendant-

supervisors hardly qualify as a model for administering an

  

 7We pause to emphasize that this is no ordinary hostile 7
environment sexual harassment case. Ordinarily, such claims are
presented under the rubric of Title VII, which imposes liability
on an employer where the sexual harassment has created a hostile
environment, known to the employer, and the employer nonetheless
fails to take action variously characterized as "appropriate,"
"reasonable" or "effectual." See id. at 901. On the other hand, 
Sanchez is left to confront the far more stringent "deliberate
indifference" standard applicable under 1983, since her Title
VII claims have been dismissed. See supra p. 5. 

 12

efficient and effective anti-harassment policy. Even overlooking

the efforts to discourage Sanchez from pressing the second

complaint, their leisurely response to a serious second complaint

could create a trialworthy issue given her version of the

relevant events and assuming a lack of mitigating explanations 

if simple negligence were the applicable standard. But it is

not. 

 Further, we in no sense mean to suggest that a supervi-

sor automatically escapes liability by conducting a formal

investigation into each harassment complaint and merely deliver-

ing a reprimand to the misfeasor even though experience has shown

that it will be disregarded. At some point, not reached here, a

failure to take prompt and emphatic action could constitute

reckless indifference rather than mere laxity.

 III III

 CONCLUSION CONCLUSION 

 As the "deliberate indifference" standard for supervi-

sory liability has not been met by the evidence proffered against

the defendant-supervisors, the district court judgment must be

affirmed. The parties shall bear their own costs. 

 SO ORDERED.  SO ORDERED.  

 13