USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 95-1359 LAURA THORN, LTD., Plaintiff, Appellant, v. ALBERT J. ALLETZHAUSER, Defendant, Appellee.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] ___________________  ____________________ Cyr, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________  ____________________ Charles L. Glerum, with whom Roberto C. Quinones and Choate, Hall _________________ ___________________ ____________ & Stewart were on brief for appellant. _________ Harry C. Beach, with whom Leonard F. Clarkin, Paul B. Bottino and ______________ __________________ _______________ Clarkin, Sawyer & Phillips, P.C. were on brief for appellee. ________________________________  ____________________ December 21, 1995  ____________________  CYR, Circuit Judge. Plaintiff Laura Thorn, Ltd. CYR, Circuit Judge. ______________ ("Thorn, Ltd.") appeals a summary judgment order disallowing its claim for breach of a loan guaranty by defendant Albert J. Alletzhauser ("Alletzhauser"). As we conclude that Alletzhauser is not entitled to judgment pursuant to Fed. R. Civ. P. 56(c) under Massachusetts law, we vacate the judgment and remand for  further proceedings.  I I BACKGROUND1 BACKGROUND1 __________ On April 14, 1989, an individual named Laura Thorn loaned $250,000 to Hamilton/Thorn Research Associates ("HTRA"). At that time, Laura Thorn was the principal shareholder in Thorn, Ltd., and Thorn, Ltd. in turn was a general partner in HTRA. Under the terms of a Subordinated Loan Agreement ("Agreement") and a Subordinated Promissory Note ("Note"), HTRA's loan obliga- tion to Laura Thorn was subordinated to all existing and future HTRA obligations to Beverly National Bank or its successors.2 On December 31, 1990, Laura Thorn assigned all her rights under the Agreement and Note to Thorn, Ltd. In July 1991, Thorn, Ltd. negotiated a transfer of its general partnership interest in HTRA to Hamilton Laboratories,  ____________________ 1Jurisdiction is based on 28 U.S.C. 1332(a)(2) (diversity) and 28 U.S.C. 1291. We recount the material facts in the light most favorable to Thorn, Ltd., the party against which summary judgment was granted. Velez-Gomez v. SMA Life Assur. Co., 8 F.3d ___________ ___________________ 873, 874 (1st Cir. 1993).  2The Note is set out in the appendix. See infra pp. i-ii.  ___ _____ 2 Inc. ("HLI"), a corporation partly owned by Alletzhauser. To induce the transfer, Alletzhauser (as guarantor), HTRA (as maker), and Thorn, Ltd. (as subordinated lender), entered into a loan guaranty agreement ("the Guaranty") on July 11, 1991, whereby Alletzhauser guaranteed prompt payment of HTRA's debt to Thorn, Ltd. "when and as the Subordinated Obligations become due and payable in accordance with their terms. . . ."3 Pursuant to section 1 of the Note and the Guaranty, on April 8, 1994, Thorn, Ltd. demanded full payment from Alletzhauser. HTRA and Alletz- hauser declined on the ground that payment was not due.  In September 1994, Thorn, Ltd. commenced this action against Alletzhauser in federal district court to enforce its Guaranty. Alletzhauser denied liability, and asserted as an affirmative defense that legal action on the Guaranty was "prema- ture." Ultimately, the district court entered summary judgment against Thorn, Ltd. on the ground that it had no present right to enforce the Guaranty against Alletzhauser since HTRA, the primary obligor, was not in default on its loan obligation to Thorn, Ltd.  ____________________ 3The relevant Guaranty provisions are set out below: Section 2 - Guaranty of Payment and Performance _______________________________________________ The Guarantor unconditionally guarantees . . . the prompt payment by the Borrower to the Lender of the Subordinated Obligations when and as the Subordinated Obligations become due and payable in accordance with their terms . . . . Section 3 - Obligations Unconditional _____________________________________ . . . This Agreement shall not, however, be construed to require ____ _________ _____ ___ __ _________ __ _______ the Guarantor to make any payment . . . (b) which the Lender ___ _________ __ ____ ___ _______ _____ ___ ______ either would not be entitled to receive or would be obligated to ______ _____ ___ __ ________ __ _______ __ _____ __ _________ __ hold in trust for the benefit of, or otherwise turn over to, any ____ __ _____ ___ ___ senior lender pursuant to the terms of an Intercreditor Agreement ______ ______ ________ __ ___ _____ __ __ _____________ _________ or the Subordinated Note. (Emphasis added.) __ ___ ____________ ____ 3 Thorn, Ltd. contends on appeal that the district court erred in granting summary judgment and abused its discretion in refusing to strike certain affidavits submitted in support of Alletz- hauser's motion for summary judgment. II II DISCUSSION4 DISCUSSION4 __________ Alletzhauser acknowledges the validity of the Guaranty, but contends that the present attempt to enforce it is premature since the loan obligation itself is not yet due. Thorn, Ltd. responds that the loan obligation became due on April 1, 1994, and since HTRA has not paid, Alletzhauser must honor the Guaran- ty. The parties agree that Massachusetts law governs their dispute. Under Massachusetts law, a guarantor's liability is determined by the terms of the guaranty agreement; as a general rule, the terms of the guaranty are not construed against the guarantor. See Merrimack Valley Nat'l Bank v. Baird, 363 N.E.2d ___ ___________________________ _____ 688, 690-91 (Mass. 1977). The operative provision in the Guaran- ty states that Alletzhauser "unconditionally guarantees . . . the prompt payment by the Borrower to the Lender of the Subordinated Obligations when and as the Subordinated Obligations become due ____ ___ __ ___ ____________ ___________ ______ ___ and payable in accordance with their terms . . . . " See supra ___ _______ __ __________ ____ _____ _____ ___ _____ note 3, 2 (emphasis added). No other provision in the Guaranty  ____________________ 4The summary judgment ruling is reviewed de novo under the __ ____ identical criteria incumbent upon the district court. Alexis v. ______ McDonald's Restaurants of Mass., Inc., 67 F.3d 341, 346 (1st Cir. _____________________________________ 1995).  4 expressly states when Thorn, Ltd. may look to Alletzhauser for payment under the Guaranty, and the parties agree that the court must examine the Note to determine when Alletzhauser is obligated to make good on the Guaranty.  The district court ruled that HTRA was not obligated to repay the Note as long as senior debt remained outstanding. Thorn, Ltd. insists that the district court misinterpreted the plain language of the Note, which includes a payment schedule in section 1. This provides for periodic payments by HTRA and further provides that all outstanding principal and accrued but unpaid interest "shall be due and payable on April 1, 1994." See ___ infra Appendix p. i, 1.  _____ Alletzhauser responds that the court must interpret the Note as a whole, and that the unconditional subordination provi- sions in section 4 plainly supersede the payment schedule set forth in section 1.5 Section 4 contains the following subordi- 5 nation provision: "Notwithstanding any other provision of the  ____________________ 5See Culp v. Tri-County Tractor, Inc., 736 P.2d 1348, 1350- ___ ____ ________________________ 53 (Idaho Ct. App. 1987) (ruling that subordination provisions in notes superseded schedule for annual interest payments). Alletz- hauser suggests that the Note provides for "complete" subordina- tion, which is not uncommon in circumstances where the junior lender is a parent company or an officer, director, or stockhold- er of the borrower. Carl D. Lobell & Sharon B. Applegate, Lending To Troubled Companies- Special Considerations: Fraudulent _________________________________________________________________ Transfers, Substantive Consolidation, Subordinated Debt Treat- _________________________________________________________________ ment; Developing Theories of Lender Liability And Equitable _________________________________________________________________ Subordination, PLI Corp. Law & Practice Course Handbook Series, _____________ Apr. 1991, III.D.(1), available in Westlaw at 733 PLI/Corp. _________ __ 175; see also Culp, 736 P.2d at 1350-52 (complete subordination ___ ____ ____ of officers' loans to company). The transaction at bar involved just such a junior loan from a corporate insider of the borrowing company. 5 Subordinated Loan Documents,6 the Maker [HTRA], and each holder of this note [Thorn, Ltd.] . . . agree that the Subordinated Debt shall be subordinated as set forth in this Section 4 to all present and future extensions of credit to the Maker by The Beverly National Bank [or its successors]. . . ." See infra ___ _____ Appendix p. i, 4. More to the present point, subsection 4.4 expressly restricts the right of Thorn, Ltd. to enforce the Note against HTRA. "Notwithstanding any contrary term or provision of _______________ ___ ________ ____ __ _________ __ the Subordinated Debt Documents, (i) no Subordinated Debt shall ___ ____________ ____ _________ become or be declared to be due and payable prior to the date on which the Senior Debt becomes or is declared to be due and _______ __ __ ________ __ __ ___ ___ payable . . . ." See infra Appendix p. ii, 4.4 (emphasis _______ ___ _____ added). Since there is no dispute that senior debt to Bank of Boston remains outstanding, Alletzhauser argues that the district court correctly ruled that HTRA's primary loan obligation to Thorn, Ltd. is not yet due, and therefore, he presently has no obligation on the Guaranty.7  Thorn, Ltd. contends that subsection 4.4 does not  ____________________ 6According to section 2 of the Note, the term "Subordinated Loan Documents" includes the Note, the Agreement, and other security agreements related to the loan. 7At common law, the obligation of a guarantor is collateral to the primary debt. "'[The guarantor's] obligation was based not on the note but upon the contract expressed in the guaranty that [he] would pay the principal sum of the note with interest, if the maker of the note failed to pay at maturity.'" D'Annolfo v. _________ D'Annolfo Constr. Co., 654 N.E.2d 82, 83 (Mass. App. Ct. 1995) ______________________ (quoting Charlestown Five Cents Sav. Bank v. Wolf, 36 N.E.2d 390, ________________________________ ____ 392 (Mass. 1941)). The Uniform Commercial Code does not abrogate the common law rule here because the Guaranty is not inscribed on the Note. D'Annolfo, 654 N.E.2d at 84. _________ 6 affect its right to enforce its Guaranty against Alletzhauser, as distinguished from its rights against HTRA under the Note. Thorn, Ltd. finds support for this contention in subsection  4.5(a): The provisions of this Section 4 are solely for the purpose ______ of defining the relative rights of the holders of Senior Debt on the one hand, and the holders of Subordinated Debt on the other hand, and none of such provisions shall impair as ____ __ ____ __________ _____ ______ between the Maker and any holder of Subordinated Debt the obligation of the Maker [HTRA], which is unconditional and _____ __ _____________ ___ absolute, to pay to such holder of Subordinated Debt the ________ principal and premium, if any, thereof and interest thereon, and all other amounts in respect thereof, all in accordance ___ __ __________ with the terms thereof, nor shall any such provisions ____ ___ _____ _______ prevent any holder of Subordinated Debt from exercising all remedies otherwise permitted by applicable law or under the terms of such Subordinated Debt upon a default thereunder, subject to the rights, if any, under the provisions of this _______ __ ___ ______ __ ___ _____ ___ __________ __ ____ Section 4 of holders of Senior Debt.  _______ _ __ _______ __ ______ ____ See infra Appendix p. ii, 4.5(a) (emphasis added). Thorn, Ltd. ___ _____ insists that the subordination provisions, interpreted in light of subsection 4.5(a), reflected the overarching concern of the original senior lender (Beverly National Bank) that its priority right to payments from HTRA not be jeopardized by any right Thorn, Ltd. had to payment from HTRA; and, further, that any attempt by Thorn, Ltd. to proceed against Alletzhauser on the Guaranty not be permitted to affect the senior lender's right to priority payment, nor undermine HTRA's ability to repay senior debt according to its terms. As this lawsuit only contemplates recovery from Alletzhauser and not HTRA, Thorn, Ltd. urges us to disregard section 4, and instead give full effect to the April 1994 due date specified in section 1.  In addition to subsection 4.5(a), Thorn, Ltd. points 7 out that the unquestioned purpose of the Guaranty was to induce Thorn, Ltd. to transfer its general partnership interest in HTRA to HLI, a company partly owned by Alletzhauser. With the resul- tant transfer of control, Thorn, Ltd. lost all ability to require HTRA to satisfy its senior debt to Bank of Boston, as well as any power to control the timing of its own recovery from HTRA. Thorn, Ltd. maintains, therefore, that section 1 of the Note was meant to offset its loss of control by prescribing a payment schedule which would continue to govern the ongoing repayment relationship between Thorn, Ltd. and Alletzhauser. Otherwise, Thorn, Ltd. might never be able to collect on either the Note or the Guaranty.  Confronted with these mutually incompatible interpreta- tions, we conclude that neither satisfactorily reconciles the conflicting contract language so as to enable summary judgment on the present record. The Alletzhauser interpretation comports with the classic construct of a loan guaranty,8 as well as with the parties' "course of performance."9 On the other hand, the   ____________________ 8Indeed, permitting recovery from Alletzhauser on the Guaranty would result in a corresponding depletion of HTRA's assets prior to repayment of the senior debt in the event that Alletzhauser is entitled to indemnification from HTRA, see 38 Am. ___ Jur. 2d Guaranty 127 (1968); Restatement (Second) of Security  ________ ________________________________ 104(1) (1941), notwithstanding the fact that the subordination provisions are designed to protect senior lenders from just such an occurrence.  9Thorn, Ltd. does not explain why it made no attempt to enforce its rights sooner despite the fact that HTRA had not made a single payment of interest or principal in accordance with the payment schedule in section 1 of the Note, either before or after Thorn, Ltd. transferred control to HLI in July 1991. See Rosen ___ _____ v. A-H Inc., 456 N.E.2d 477, 479 n.5, 480 (Mass. App. Ct. 1983) ________ 8 context in which the execution of the Guaranty took place gives no indication as to why Thorn, Ltd. would permit a virtually perpetual loan repayment extension to an enterprise it no longer owned.10 Both parties represent that substantial negotiations attended the drafting of the Note and Guaranty. Yet their affidavits provide little information concerning the actual terms of their negotiations and each party draws a different conclusion as to their import. Were we to approve summary judgment without more information, the result reached might well fail to reflect the aims and intentions of the parties. See Merrimack Valley, ___ ________________ 363 N.E.2d at 690 ("[W]hen a contract term is ambiguous, its import is ascertained from the parties' intent as manifested by the guaranty's terms and the circumstances surrounding its creation, such as [the] relationship of the parties, actions of the parties and established business usages."). Normally, we would not press for further record devel- opment absent a clearer indication that further evidence will be forthcoming. We are convinced nonetheless that a remand for further proceedings is appropriate here: the contract language  ____________________ (noting that junior lender's performance conformed with court's broad construction of subordination provision in favor of senior lenders), rev. denied, 459 N.E.2d 824 (Mass. 1984). ____ ______ 10Neither the parol evidence rule nor the integration clause in the Guaranty prevents the court from considering the circum- stances surrounding the execution of the Guaranty. First, extrinsic evidence may inform an ambiguity determination. See ___ Robert Indus., Inc. v. Spence, 291 N.E.2d 407, 409 (Mass. 1973). _______________ ____ ______ Second, the court need not look beyond the four corners of the Guaranty in this appeal, since section 1 of the Guaranty itself supplies the context to which Thorn, Ltd. adverts.  9 is in conflict; there is no public policy consideration to tip the balance; and there is a much better prospect of resolving this private conflict as the parties intended, if an effort is made to discern their intentions based on their actual negotia- tions and the events that led up to and followed the Guaranty. 10 III III CONCLUSION CONCLUSION __________ Given the unresolved conflict in the language of the guaranty and loan documents and the dearth of evidence relating to the parties' intent, we conclude that Alletzhauser failed to establish an entitlement to summary judgment as a matter of law. We therefore vacate the judgment and remand for pro- _______________________________________________________ ceedings consistent with this opinion. The parties shall bear ______________________________________ _______________________ their own costs. SO ORDERED. SO ORDERED _______________ __________ 11 APPENDIX11 APPENDIX ________ 1. Payment. On each October 1 and April 1 occurring while any _______ principal amount of this note is outstanding, [HTRA] shall pay to [Laura] all accrued but unpaid interest on the outstanding principal balance of this note. Commencing April 1, 1991, [HTRA] shall pay to [Laura] a principal payment as follows: Date of Payment Principal Payment _______________ _________________ April 1, 1991 $25,000 October 1, 1991 $25,000 April 1, 1992 $25,000 October 1, 1992 $25,000 April 1, 1993 $37,500 October 1, 1993 $37,500 The entire remaining outstanding principal balance of, and all ___ ______ _______ ___ ___ accrued but unpaid interest on, this note shall be due and ______ ________ _____ __ ___ ___ payable on April 1, 1994.  _______ __ _____ __ ____ . . . . 4. Subordination. Notwithstanding any other provision of the _____________ _______________ ___ _____ _________ __ ___ Subordinated Loan Documents, [HTRA], and each holder of this note ____________ ____ _________ ____ ___ [Thorn, Ltd.] . . . agree that the Subordinated Debt shall be ___________ _____ ____ ___ ____________ ____ _____ __ subordinated as set forth in this Section 4 to all present and ____________ __ ___ _____ __ ____ _______ _ __ ___ _______ ___ future extensions of credit to [HTRA] by The Beverly National ______ __________ __ ______ __ ____ __ ___ _______ ________ Bank [or its successors] . . . . ____ 4.2 Limitation on Payments. Payments of interest and __________ __ ________ principal shall be made as they become due in accordance with the terms of the Subordinated Loan Documents. . . . So long as any __ ____ __ ___ Senior Debt is outstanding, no payment of principal or interest ______ ____ __ ___________ __ _______ __ _________ __ ________ on this note shall be made prior to the date when due in accor- __ ____ ____ _____ __ ____ _____ __ ___ ____ ____ ___ __ ______ dance with the terms of the Subordinated Loan Documents.  _____ ____ ___ _____ __ ___ ____________ ____ _________ 4.3 Payments Held in Trust. If, notwithstanding the ________ ____ __ _____ foregoing, any payment or distribution of the assets of the Maker of any kind or character shall be received, by set-off or other- wise, by any holder of Subordinated Debt before all Senior Debt is paid in full, such payment or distribution and the amount of ____ _______ __ ____________ ___ ___ ______ __ any such set-off shall be held in trust by such holder of Subor- ___ ____ _______ _____ __ ____ __ _____ dinated Debt for the benefit of the holders of Senior Debt . . . ___ ___ _______ __ ___ _______ __ ______ ____ which shall have the right . . . to the payment of all Senior Debt remaining unpaid until all such Senior Debt shall have been  ____________________ 11All brackets and emphasis in the text of the Note have been added.  i paid in full.  4.4 Limitation on Enforcement. No holder of Subordinated __________ __ ___________ Debt shall, without the prior written consent of the holders of the Senior Debt, accelerate the maturity of, or institute pro- ceedings to enforce, any Subordinated Debt, notwithstanding any term or provision to the contrary contained in the Subordinated Debt Documents. . . . Notwithstanding any contrary term or provision of the Subordinated Debt Documents, (i) no Subordinated Debt shall become or be declared to be due and payable prior to the date on which the Senior Debt becomes or is declared to be due and payable . . . .  4.5 Effect of Provisions. (a) The provisions of this ______ __ __________ Section 4 are solely for the purpose of defining the relative rights of the holders of Senior Debt on the one hand, and the holders of Subordinated Debt on the other hand, and none of such ____ __ ____ provisions shall impair as between the Maker [HTRA] and any __________ _____ ______ __ _______ ___ _____ ___ ___ holder of Subordinated Debt [Thorn, Ltd.] the obligation of the ______ __ ____________ ____ ___ __________ __ ___ Maker [HTRA], which is unconditional and absolute, to pay to such _____ ____ _____ __ _____________ ___ _________ __ ___ __ ____ holder of Subordinated Debt the principal and premium, if any, ______ __ ____________ ____ ___ _________ ___ _______ thereof and interest thereon, and all other amounts in respect ___ ________ _______ thereof, all in accordance with the terms thereof, nor shall any ___ __ __________ ____ ___ _____ _______ such provisions prevent any holder of Subordinated Debt from exercising all remedies otherwise permitted by applicable law or under the terms of such Subordinated Debt upon a default thereun- der, subject to the rights, if any, under the provisions of this Section 4 of holders of Senior Debt. The Maker hereby agrees that, during any period in which the Maker is not permitted to make any payment by virtue of the provisions of this Section 4, any applicable statute of limitations shall be tolled.  ii